The State, Reeves v. Ferguson.    .

---

THE STATE, EX REL. JOSEPH REEVES, v. WILLIAM FERGUSON, JUN., OVERSEER OF THE HIGHWAYS.

1. An overseer of the highways cannot, at his pleasure, lay aside his office.

2. His resignation, to make his office vacant, must be accepted by competent authority.

3. Proof that a person has been acting in a public office is *prima facie* evidence of his official character.

4. The clause in the act relating to townships, requiring the moderator to sign the township book, is merely directory; the book is competent evidence without such signature.

5. A new trial will not be granted where the merits of the case have been heard and justice done.

A writ of *mandamus* was, upon due application, ordered to issue out of this court, directed to the defendant in this cause, and returnable to the first Tuesday of November, 1863, which writ is in the following words :

*New Jersey, ss.*—The state of New Jersey to William Ferguson, jun., one of the overseers of the highways of the township of Upper Alloways Creek, in the county of Salem—greeting :

Whereas, certain of the surveyors of the highways of the county of Salem, duly appointed for that purpose by the Inferior Court of Common Pleas of said county, heretofore, to wit, on the seventeenth day of October, in the year of our Lord one thousand eight hundred and fifty-nine, did lay out, according to law, a certain public road in the township of Upper Alloways Creek, in said county, to be two and a half rods wide, beginning at a stake set on land of Henry Jarman, near Charles Campbell's ·corner, in the road leading to· Allowaystown, known as " commissioners' road," and running· north forty-one degrees ten minutes west, on lands of said Henry Jarman, Robert Wentzell, William S. Boltinghouse, Emmor Reeve, Maskell Ware, heirs of Samuel Dawson, Charles Stokes, John Hannah, and Abigail Ann Jessup, one· hundred and thirty-six chains and fifty links, to a stake set on said Jessup's land, in the road leading from Woodstown to Allowaystown, and there to end, which said line is the· middle of the road ; and afterwards, to wit, on the day and year aforesaid, in due form of law, did make return thereof to the clerk of said court, who received the same, and after· the expiration of fifteen days from the time of so receiving said return, did duly record the same in Book F of Banks. and Roads, on pages 131 and 132, the same being a book

kept by him for that purpose, as by reference thereto will more fully and at large appear; and whereas, the said surveyors, in and by their said return, did appoint a certain day and year therein mentioned, to wit, the fourteenth day of November, in the year of our Lord one thousand eight hundred and fifty-nine, as the time when the overseers of the highways of said township of Upper Alloways Creek should open the said public road, so by them laid out as aforesaid.

And whereas, you, the said William Ferguson, jun., at the last annual town meeting of the freeholders and inhabitants of the said township of Upper Alloways Creek, qualified by law to vote at such town meeting, to wit, on the tenth day of March, in the year of our Lord one thousand eight hundred and sixty-three, was elected one of the overseers of the highways of said township for the ensuing year, and afterwards, to wit, on the day and year last aforesaid, accepted the said office and took upon yourself the burthen of executing the same.

And whereas, a township committee of said township of Upper Alloways Creek, or a majority of them, had theretofore, according to law, assigned and appointed to the respective overseers of the highways of said township, their several limits and divisions of the highways within said township, by them severally to be opened, cleared out, amended, and repaired; one of which limits and divisions was then described, designated, and known, and ever since has been and now is described, designated, and known as the "fourth road district," the same having been in no wise since annulled or altered; and whereas, all that part of the said public road, so as aforesaid laid out by the said surveyors, which begins at a run or watercourse where said public road crosses the same, the said run or watercourse being the boundary line between the fourth and seventh road districts of said township, and running from thence along said public road as laid out as aforesaid, north forty-one degrees and ten minutes west, eighty-seven chains, more or less, to a stake set on Abigail Ann Jessup's land, in the road leading from Woodstown to

Allowaystown ; the same being the ending point of the aforesaid public roads, is situate and lies within the said "the fourth road district," and still remains unopened and unfitted for public use.

And whereas, you, the said William Ferguson, jun., (having been elected overseer of the highways as aforesaid, and for the said "the fourth road district,") the township committee of said township of Upper Alloways Creek, duly chosen agreeably to law in said township, or a majority of them, afterwards, to wit, on the eleventh day of March, in the year of our Lord one thousand eight hundred and sixty-three, did assign, allot, and appoint, in writing, to you, as overseer as aforesaid the said "the fourth road district" as your limit and division of the highways within said township to be by you opened, cleared out, amended, and repaired.

And whereas, although under and by virtue of your said election to and acceptance of said office of one of the overseers of the highways of said township, and of the aforesaid assignment and appointment to the respective overseers of the highways of said township of their several limits and divisions of the highways therein, and of the said assignment, allotment, and appointment to you of the said limit or division thereof, described, designated, and known as "the fourth road district," and of other, the premises aforesaid, it then, to wit, on the day and year last aforesaid, became and was, and ever since hath been, and now is your duty, as one of the overseers as aforesaid, to observe and conform yourself to all the said assignments, allotments, and appointments of the limits and divisions of the highways within said township, and particularly to open, clear out, work, make, and put in good order for public use and travel, all that part of the said public road situate and lying within the said "the fourth road district," yet, that in disregard of your duty in this behalf, you have wholly neglected and refused, and still do wholly neglect and refuse to open, clear out, work, make, and put in good order the same, to the great damage and grievance of the inhabitants of said township and other citi-

The State, Reeves v. Ferguson.

zens of this state, having occasion to use and to travel on and along the same, as by the complaint of Joseph Reeves and others, relators, we have understood.

Now, therefore, we being willing that full and speedy justice be done in this behalf as it is reasonable, command you, the said William Ferguson, jun., that immediately after the receipt of this our writ, without delay you do proceed to open, clear out, work, make, and put in good order for public use and travel, all that part of the said public road which lies within your the said " the fourth road district," or that you show cause to the contrary thereof, lest that complaint shall again come to us by your default; and in what manner you shall have executed this our writ, make known to our Justices of our Supreme Court of Judicature, at Trenton, on the first Tuesday of November next, then and there returning this our writ; and this you are not to omit upon peril that may fall thereon.

Witness, the Honorable Edward W. Whelpley, Chief Justice, at Trenton aforesaid, the fifteenth day of August, in the year of our Lord one thousand eight hundred and sixty-three.

CHARLES P. SMITH, <em>Clerk.</em>

SAM'L A. ALLEN, <em>Att'y.</em>

To this writ the defendant made the following return :

I, William Ferguson, jun., in the within writ of <em>mandamus</em> named and mentioned, to the Honorable Justices of the Supreme Court of Judicature of the state of New Jersey, do hereby make return thereto, and assert and certify that I, the said William Ferguson, was not at the time when the said writ was served upon and delivered to me by the sheriff of the county of Salem, nor have I at any time since been an overseer of the highways of the township of Upper Alloways Creek, in the said county of Salem.

WILLIAM FERGUSON, jun.

November 3, 1863.

To which the following plea was filed :

<em>Salem county, ss.</em>—And thereupon, on the same first Tues-

day of November, in the year of our Lord one thousand eight hundred and sixty-three, before our Justices of our Supreme Court of Judicature,. at Trenton, came and with the said Joseph Reeves in the said writ and return named, by Samuel A. Allen, his attorney, as the said William Ferguson, jun., in the aforesaid writ and return likewise named, by his attorney; and the said Joseph Reeves, having heard the said writ and return read, protesting that the said return and the matter therein contained are insufficient in law to bar or preclude him, the said Joseph Reeves, from having a peremptory writ of *mandamus* in this behalf. For plea, the said Joseph Reeves, by force of the statute in such case made and provided, saith, that at the time when the said writ of alternative *mandamus* was served upon and delivered to the said William Ferguson, jun., to wit, on the twenty-fourth day of August, in the year of our Lord one thousand eight hundred and sixty-three, he, the said William Ferguson, jun., was and ever since hath been, and now is an overseer of the highways of the township of Upper Alloways Creek,. in the said county of Salem, to wit, at Salem, in said county, and this he, the said Joseph Reeves, prays may be inquired of by the country, &c., and the said William Ferguson, jun., doth so likewise, &c.

S. A. Allen,
*Att'y for Joseph Reeves.*

The issue was tried at the Salem Circuit, in December, 1863.

After the case was opened by the plaintiff, the defendant's counsel objected to the pleadings in the cause and moved for a non-suit, because the *mandamus* was insufficient; that it was in the nature of a declaration, and should have stated specifically the time and manner of appointing the surveyors for the different districts. The motion was overruled.

The plaintiff proved by William Elkinton that he was town clerk of Upper Alloways Creek, elected on the 10th of March, 1863, and that William Ferguson was elected one of

the overseers of the highways of said township, and accepted the office; that he made a list of the officers from the town book, and sent a copy to the clerk of the court; they draw off, each district, and elect, and then they are handed in to us. He was elected by the people of his road district, as he was the year before; can't say that he ever acted as overseer. Elkinton also proved that Wm. F. Reeve, the moderator of the town meeting, had not signed the proceedings of the meeting after they were recorded, but that the name was written by Elkinton himself. The defendant's counsel objected to the book being read in evidence, and the court overruled the objection.

Plaintiff further proved by Isaac Evans that he lived in district No. 4, in Upper Alloways Creek township, and was called by William Ferguson to work on the roads since the annual town meeting; that he was acting as overseer at that time, and that witness worked for him one day, and it came out of his tax.

On his cross-examination, said he worked on the road from Allowaystown, in fourth district, running from Reeve's pond through Maskell Ware's farm; from what he heard say, this was in the fourth district.

Certain depositions were then offered in evidence, in which it was admitted that he was overseer of the highways in said fourth district.

William Ferguson, the defendant, then testified that he resigned the office of overseer of the highways to the township committee of Upper Alloways Creek, on the 9th June, 1863, and it was accepted. He then produced and proved the resignation and acceptance, which are as follows:

June 9, 1863.

To township committee of Upper Alloways Creek:

Sirs—This is to inform you that we, the undersigned, do resign being overseers of the road in the aforesaid township.

(Signed,)        ROBERT WENTZELL,

WILLIAM FERGUSON, jun.

We, the township committee, do accept the resignation of Robert Wentzell as overseer of the roads; and we do accept the resignation of William Ferguson, jun., overseer of roads in fourth district.

(Signed,) JONATHAN HOUSE,
ZACCHEUS TIMBERMAN,
JOHN SICKLER,
JOHN LAMBERT.

The defendant further testified that he had done nothing as overseer since the 9th of June, 1863.

On motion of the plaintiff, the said resignation and acceptance, and all evidence of the defendant touching the same, was overruled by the court.

There being no further evidence on the part of the defendant, the jury, under the charge of the court, rendered a verdict for the plaintiff.

On the coming in of the *postea,* a rule was granted that the plaintiff show cause why the verdict should not be set aside and a new trial granted.

The rule was argued by—

For the defendant, *A. L. Eakin* and *P. D. Vroom.*

For the plaintiff, *S. A. Allen* and *A. Browning.*

*Mr. Eakin* contended—

1. An alternative *mandamus* is in the nature of a declaration, and must state every fact necessary to show that the party is entitled to the relief prayed for. 3 *St. N. Prius* 2321; *People, ex rel.,* v. *Supervisors W. Chester,* 15 *Barb.* 607; 5 *Com. Dig.* 46, *c.* 3, *Mandamus,* (*ed. of* 1825); *Rex* v. *Justices of West Riding,* 7 *T. R.* 48.

All material averments should be opened and proved, or a party cannot recover. 3 *Bla. Com.* 362; 1 *Chitty's Pl.* 305, 306; 2 *Saund.* 206, *n.* 22, 207, *n.* 24; *Alebury* v. *Walby,* 1 *Stra.* 229; *Perrine* v. *Farr,* 2 *Zab.* 356, 361.

2. The township book was improperly admitted in evidence.

The proceedings were not signed by the presiding officer. This is required by the statute, and being a statutory requirement must be complied with and so appear, or it is void. *State* v. *Scott*, 4 *Halst*, 17, 20 ; *Snediker* v. *Quick*, 1 *Green R.* 306–8 ; *State* v. *Shreve*, 3 *Green R.* 58; 7 *Com. Dig.* ; *Poiar*, c. 6, *T.*

The plaintiff sets up title against us, and he must show it by the best evidence the nature of the case admits. *Bull. N. P.* 203; *Gilb. Ev.* 15; 1 *Stark. Ev.* 102, 389, 390; 1 *Phil. Ev.* 176.

3. The court should have nonsuited the plaintiff.

It appears by the evidence that Ferguson was not elected an overseer of the roads of the township by the township itself, but was chosen an overseer of a certain district in the township, and by the voters of that district.

The *allegata* and *probata* are not in agreement.

The variance is a fatal one.   6 *Halst.* 293; 7 *Halst.* 182, 326; *Doug.* 642–3.

4. The resignation of Elkinton and the acceptance of it by the town committee was improperly overruled.

A civil officer has a right to resign by law and custom.   1 *Com. Dig.* 500, *tit. Franchise, F.* 30, citing 2 *Rol. Ab.* 456, 1, 10, 11 ; 1 *Sid.* 14; *Popham* 134.

A resignation by parol, if it be accepted and an entry made of it, is sufficient.   *Rex* v. *Mayor of Ripon, Salk.* 433 ; 1 *Ld. Raym.* 563, citing 1 *Vent.* 19 ; 1 *Lev.* 148 ; 2 *Show.* 66.

A civil officer has a right at any time to resign.   *U. S.* v. *Wright,* 1 *McLean's C. C. R.* 509 ; *State* v. *City of Newark,* 3 *Dutcher* 197–8.

The township of Upper Alloways Creek is a public corporation and the common law applies to its officers.

The common law can be abrogated or changed only by statute.

None of our statutes in relation to this subject contain any prohibitory clause against resignation, and the rule of

the common law therefore remains. 1 *Bla. Com.* 83; 1 *Kent* 464; 3 *Zab.* 33.

Again. The town committee had power to accept the resignation.

A corporation has power to accept a resignation. 1 *Sid.* 14; 1 *Ld. Raym.* 563.

A township committee has power to appoint. It is empowered to fill the vacancy, and has therefore a right to accept a resignation. *Nix. Dig.* 876, § 13; *State* v. *Newark*, 3 *Dutcher* 186.

All need not concur; a majority is sufficient. 4 *Com. Dig.* 475, (*Day's ed.*) *Franchise; Rex* v. *Foxcroft*, 2 *Burr.* 1012.

No special meeting of the township committee is necessary to receive a resignation. No one has power to call special meetings. All that is required is that the party notify the committee that he resigns his office or employment, or will act no longer. There is no special mode of acceptance, because the resignation cannot be refused.

*Mr. Browning* and *Mr. Allen*, for the plaintiff.

1. The election of the defendant as an overseer of the highways is proved—1, by the town book; 2, by the clerk of the town; 3, by depositions signed by the defendant, in which he declared that he was elected for the fourth district, and 4, by his acceptance of the office and working part of the road in that district.

It is of no consequence that the town book was not signed by the moderator of the town meeting. His name was affixed to it by the clerk.

The proof of the election would have been sufficient if there had been no book. 3 *Zab.* 535.

2. A township officer cannot resign his office.

The common law right of resignation, if any, is confined to those officers who have received and hold their office from an existing power, to which they can tender their resignation, and which can immediately accept it and fill the va-

cancy.  *Van Orsdall* v. *Hazard*, 3 *Hill's R.* 246 ; *Grant on Corp.* 221.

Township officers when elected will be compelled to serve ; especially those whose duties are connected with the public highways.  Officers shall hold their office for one year.  *Nix. Dig.* 875, § 12.

If one refuse to serve, or die or become incapable of serving, the township or the committee may fill the vacancy.

In this case defendant did not refuse the office, he is not dead, has not moved out of the state, or become disabled.

If a person elected refuses to accept, he must pay a fine of fifteen dollars.  *Nix. Dig.* 878, § 22.

Would any one pay the fine if he could accept the office and resign the next day ?

The township is the appointing power.  The resignation can be only to that power, and none other can fill the vacancy.

The defendant attempted to resign to the township committee, and it is contended that is equivalent to a resignation to the township.

But the committee have no general powers.  They do not represent the town meeting.  They have no powers but such as are given them by statute.  They are authorized to fill vacancies on special occasions, but this is not one of them. *Nix. Dig.* 875, *pl.* 12.

They had no right to convene simply for the purpose of accepting a resignation, and thus creating a vacancy which they could not fill.

*P. D. Vroom*, in reply, cited the following additional cases. *Gray* v. *Salem and Lynchburgh Turnpike Co.*, 4 *Randolph* 578 ; *Ang. on Corp.* 515 ; *Oakes* v. *Hill*, 14 *Pick. R.* 442 ; 1 *Greenl. Ev.*, § 203.

THE CHIEF JUSTICE.  The issue which was to be tried in this cause was, whether William Ferguson, jun., the defendant, was, at the time of the service of the writ of *mandamus*

upon him, an overseer of the highways of the township of Upper Alloways Creek, in the county of Salem. To sustain this issue *prima facie*, the relator produced and proved the township book of the election of officers. This book was objected to as evidence on the ground that it had not been signed by the moderator of the town meeting, in compliance with the provisions of the statute to that effect. *Nix. Dig.* 836, § 16.*

The construction put upon this clause of the statute on the argument, seemed to be, that the provision was designed to make the township book the sole evidence of the election of the township officers, and that if the moderator did not sign it the book was not *admissible* and the official character was not provable in any other mode.

Such does not appear to me to be a just construction of the clause. The language is simply directory; it orders the clerk to keep a book, and then provides that " the proceedings of such meetings " shall be " signed by the presiding officer of the meeting and attested by the clerk." The act does not declare that the book shall, if kept and signed in the mode prescribed, be received in evidence; much less does it intimate that if not so kept and signed it shall not be admissible as legal proof in verification of the facts contained in it. If the statute had not required the signature of the moderator, it is clear that the book would, upon general principles, being a public register, have been regarded as evidence of its own contents, its authenticity having been first established. The familiar rule is that a book kept by a person in public office, recording transactions which it is his duty to enter, all which fall under his personal observation and occur in the course of his public duty, is recognized by the law as a public writing, which, its genuinenss being attested, proves itself. The statute has merely superadded a formality, but it has not said that if such formality be omitted, the book shall not be entitled to that favor with which the law regards a public register. I think the book was properly admitted in evidence. This appears to have been the view which this

* *Rev.*, p. 1196, § 16.

court took of this section of the statute in the case of *The State* v. *Bentley*, 3 *Zab.* 535.

But I do not think that if the book had been improperly admitted at the trial, the defendant would be entitled to succeed on this motion.   The facts before this court show that independently of the book in question, there was competent proof of the official character of the defendant.   The testimony established the fact that he had notoriously acted as overseer of the highways, and two of his own affidavits were before the jury, in which it was admitted that he held such office.

It is one of the recognized exceptions to this general rule which requires the best evidence of which the point is susceptible, that proof that an individual has acted openly in a public office is *prima facie* evidence of his official character without proving his election or producing his commission. 1 *Greenl. Ev.*, § 83.   The plaintiff therefore was not obliged to produce the township book in order to prove the office of the defendant; it was enough for him to show that he had held himself out to the public as the incumbent of the office in question.   But if this point wanted additional support it would be found in the testimony on the part of the defendant himself.   The written resignation of the office of overseer, which the defendant put in, was, if any there could be, conclusive evidence on the question of official character—so that when the case closed the point now made was not in dispute. Under such circumstances it is difficult to perceive what the defendant can complain of, unless it is that some technical rule of evidence was violated.   But this can avail him nothing.   New trials are not granted on such grounds.   The invariable rule is that if the merits of the case have been fairly tested and determined, and substantial justice done, mere irregularities will not affect the verdict.   *Snyder* v. *Findley*, *Coxe* 78 ; *Campbell* v. *Ely*, 1 *Greenl.* 50 ; *Den* v. *Steelman*, 1 *Harr.* 68.

In this connection I may remark that I have examined the questions which were made in regard to the sufficiency of the pleadings, and I have not been able to discover in them

any defects which ought to affect the case as it is now pre-
sented in this present motion.  It is evident that the case of
the respective parties has been fairly tried upon the merits,
and in this condition of things a nice objection that the evi-
dence did not correspond with the pleadings does not seem
entitled to much weight, for the defendant does not now
stand upon the law, but makes his appeal to the equitable
judgment of the court.

But the more important subject remains to be considered.
The defendant, on the trial, proved on his part that before
the service of the *mandamus* he had sent in his resignation, in
writing, of the office of overseer of the highways to four of
the township committee, who had endorsed upon it an ac-
ceptance of such resignation.  It further appeared that the
fifth township committeeman who had not signed the accept-
ance, had not been notified of the meeting at which the resig-
nation was received and accepted, and was not present at it.
This resignation and acceptance were overruled by the court.

Two questions are discussed.  *First.*  Was the resignation
of the officer complete, and did it operate as a discharge from
the office in the sense of an acceptance ?  *Second.*  Was there
a legal acceptance of the resignation in this case ?

First, as to the officer's power to resign.  It was insisted
on the part of the defendant that an overseer of the highways
has the right, in law, to resign at will, and that the mere
notification of the fact that he resigns discharges him from
his office.

If he possess this power to resign at pleasure, it would
seem to follow, as an inevitable consequence, that he cannot
be compelled to accept the office.  But the books seem to
furnish no warrant for this doctrine.  ·

To refuse an office in a public corporation connected with
local jurisdiction, was a common law offence and punishable
by indictment.  In Vanacker's case, reported in *Carthew*
480, and in 1 *Ld. Raymond* 496, it was decided that a muni-
cipal corporation of common right possessed authority to
impose fines for refusal to accept office, Lord Holt remarking

"that it would be in vain to give them such power to elect sheriffs, &c., if they could not compel the persons elected to serve." And again he says : "As every citizen is capable of the benefit of this franchise so he ought to submit to the charge also." And then in the case of *Pelson*, 2 *Lev.* 252, a suit was sustained in a by-law of the corporation to recover a penalty for not serving in the office of steward. In *The Queen* v. *Hungerford*, 11 *Mod.* 142, a motion was made in the King's Bench for an information in the nature of a *quo warranto* against a common councilman of Bristol for refusing to take upon himself the office after he was chosen, but the court denied the motion and said their remedy was to proceed by their by-laws in order to compel him—he not being such a public officer as a sheriff—but if they had applied to the court for a *mandamus* they would have had it. The same principle was clearly recognized in case of *The King* v. *Larwood*, 4 *Mod.* 270, which was an information against the defendant who had been elected sheriff in the city of Norwich, and who had refused to serve, "to the great hindrance," in the language of the information, "of the business both of the King and his subjects." So uniformly is this doctrine maintained by an extensive series of decisions that we find it stated as the unquestionable law by all the text writers. Mr. Grant, in his *Treatise on the Law of Corporations*, *p.* 230, thus expresses his view of this subject : "On the other hand, when not being exempt or disqualified, a man is duly elected to an office, the court, if the corporation is a public one and the office of a sufficiently important nature to justify its interference, and in all cases where the office is connected with the administration of local jurisdiction vested in the corporation, or the administration of justice, will interfere by *mandamus* to compel him to take upon him and serve the office." This seems to be the result of the cases, because in most of the instances designated above, to refuse the office is a common law offence and punishable by indictment or criminal information. *Wilcock*, *p.* 128, maintains a similar doctrine, which he states in these words : "Besides these

methods of punishing a refusal of office when the public sustains an injury from it, as by its impeding the administration of justice in the municipality, it amounts to a misdemeanor, for which the recusant may be indicted." Then again on the same page he says : " An indictment against a constable for refusing the office must show a prescription in the corporation to elect such an officer." The numerous cases cited in the notes of the liabilities above referred to, fully sustain the doctrine thus clearly stated in the text. I think it undeniable, therefore, that upon general principles of law as contained in judicial decisions of the highest authority, the refusal of an office of the class to which the one under consideration belongs, was an offence punishable by a proceeding in behalf of the public.

Regarding then this doctrine of the law as established, it seems to be an unavoidable sequence that the party elected, and who is thus compelled by force of the sanctions of the criminal law to accept the office, cannot afterwards resign it *ex mero motu.* If his recusancy to accept can be punished, it cannot be that he can accept and immediately afterwards, at his pleasure, lay down the office. The law is far too practical to admit of such a frustration of one of its regulations, designed for the protection of the public interest. The only authority which was cited to lend countenance to such a proposition was that of *The United States* v. *Wright*, 1 *McLean* 512, in which the question was whether the sureties of a collector of internal revenue ceased to be responsible for the acts of their principal subsequent to his resignation ; and it is admitted that the language, taken in its broadest sense, of Chief Justice McLean in that case, sustains the position of the defendant. His words are—" There can be no doubt that a civil officer has a right to resign his office at pleasure, and it is not in the power of the executive to compel him to remain in office. It is only necessary that the resignation should be received to take effect, and this does not depend upon the acceptance or rejection of the resignation by the president." But it is hardly to be supposed that it was the

intention of the judge to apply this remark to the class of officers who are elected by the people and whose services are absolutely necessary to carry on local government; or that it was his purpose to brush away with a breath the doctrine of the common law, deeply rooted in public policy upon the subject. However true the proposition may be as applied to the facts then before the Circuit Court, it is clearly inconsistent with all previous decisions, if extended over the class of officers where responsibility is the subject of consideration. I do not think any of the other cases relied upon on the argument sustain in the least degree the doctrine, but on the contrary they all imply that the resignation, to be effectual, must be accepted. Thus when we examine the authorities indicated in 4 *Com. Dig., tit. Franchise, f.* 30, which was referred to, it is manifest that the office was not considered vacant until the resignation was acted upon by the appointing power. Thus in *Taylor's case, Pop.* 133, which is one of those cited by Comyn, the question was whether an alderman could surrender his office, even with the consent of the corporation. And in *Tidderley's case, Sid.* 14, likewise cited, the same point was under consideration. Lord Chief Baron Hale maintains that the corporation had the power to accept the resignation. The decisions, in my opinion, go to this point and not beyond it, that a resignation, when completed by an acceptance, will be a discharge from the office.

The remaining question in this case then is, was there a legal acceptance of the resignation of the defendant?

I do not perceive how this point can be plausibly insisted on. The people elect the overseer, how can the township committee discharge him? Whence do they derive the power? Their whole authority is defined in the statute and they have none other, except what is thus conferred and such powers as are necessary to carry into execution those thus expressly given. The 13th section, *Nix. Dig.* 835,* in the act relating to townships, provides for filling vacancies in the office of overseers of the roads by special election, and on the neglect of the electors gives the power to the committee to fill the

---

*Rev., p. 1195, § 13.

office. But this power to appoint in a certain juncture does not certainly imply a right to assist in creating a vacancy. I cannot think the township committee are the agents of the corporation for the purpose of accepting resignations.

But admitting the power to exist, it was not, in my opinion, legally exercised in this case. The township committee is composed of five members, and can no more legally act unless legally convened than the corporation can. All the members must be summoned. And in this case the fifth man was not present nor was he notified of the meeting. The rule that all the members of the corporate body, or of a branch of a corporate body who discharge special functions for the society, who have the right to consult and to vote, must be notified in some form to attend the meetings of the body to which they belong, is too familiar to require much reference to authorities in its support. See *Grant on Corp.* 156–7–8.

My conclusion is that an overseer of the highways has not the right to quit his office at pleasure. And that the resignation of the defendant in this case was not accepted by competent authority; and that, consequently, the verdict below was right.

ELMER, J. The defendant returned to a *mandamus*, directed to him as one of the overseers of the highways of the township of Upper Alloways Creek, in the county of Salem, that he was not, at the time when the said writ was served upon and delivered to him, and had not been at any time since, an overseer of the highways of the township of Upper Alloways Creek, in the said county of Salem. To this return the prosecutor pleaded that at the time when, &c., to wit, on the twenty-fourth day of August, 1863, the said William Ferguson, jun., was and ever since hath been and then was an overseer of the highways of said township, as authorized by the act for the better regulation of proceedings upon writs of *mandamus*. *Nix. Dig.* 454, § 2.* Issue having been joined on this plea, the jury, on the trial at the Salem Circuit, rendered a verdict for the relator. A rule having been allowed

* *Rev., p.* 630, § 2.

to show cause why this verdict should not .be set aside and a new trial granted, it is now to be considered whether any error was committed on the trial, which requires the interposition of this court.

It is too clear to admit of doubt that the only matter submitted to the jury and to be determined by their verdict, was the truth of the fact alleged in the plea, *viz.*, that William Ferguson, jun., at the time when, &c., was one of the overseers of the highways of the township of Upper Alloways Creek, in the county of Salem. This part of the averments in the *mandamus* and this part alone, was denied by the return. A more general denial of all the recitals was not attempted, either because the defendant could not deny them upon his oath or did not consider them important. Whatever the cause, he thought proper to set up a single reason why a peremptory *mandamus* should not issue ; a reason which, if true, is amply sufficient. The burthen of proof, as to the truth of the plea, was on the relator ; but any proof of other facts not involved in that issue would have been wholly irrelevant. There is no force, therefore, in the objection made on the trial and by one of the counsel in the argument here, that the relator should have been non-suited because he did not prove the truth of all the recitals in the *mandamus.* The authority so much relied on of *People* v. *Supervisors of West Chester*, 15 *Barb.* 607, where it is said that a *mandamus* must set-forth the proper facts, as at any time objections may be made, means only that a *mandamus*, like a declaration, must set forth a sufficient cause in itself ; and if it does not, the defect being on the record is always open in a proper way to objection, in arrest of judgment or otherwise.

The next reason insisted on for a new trial was that the court erred in admitting as evidence the book kept for the purpose of entering the names of the persons and offices to which they were elected at the town meeting, the same not having been signed by the presiding officer. It appeared that the clerk had himself signed the moderator's name, but whether with or without his authority did not appear. This

book, verified as it was by the clerk's oath of the truth of the proceedings of the town meeting therein recorded, was, in my opinion, properly admitted. It was held in the case of *The State* v. *Bentley*, 3 *Zab.* 535, that although a record duly made and signed is the best evidence of the doings of the meeting, the law does not make it so essential that the omissions of the clerk or moderator to comply with the statute, *Nix. Dig.* 835, § 16,* will deprive the public of its officers. This is emphatically a case where the provisions of the statute in this respect must be held to be only directory to the officers of the town meeting, rendering them responsible for their neglect of duty, but no more essential to the proof of the proceedings than would be the neglect of the clerk prescribed by the 17th section, to transmit a certified list of the names to the clerk of the Common Pleas, and to set up copies of such list in three or more public places in the township. There was ample proof of the election of the defendant, independently of the book and in corroboration of the entry there, not only by the evidence of the clerk but by the production of two affidavits, signed and sworn to by the defendant himself some time after the town meeting was held, in which he set forth that he was the overseer of the district and had accepted the office, and by the paper afterwards produced by the defendant, purporting to be a written resignation of the office of overseer of the roads in the aforesaid township.

Another reason insisted on was that it appeared by the evidence that Ferguson was elected overseer, not by the voters assembled in town meeting, but by the voters only of the fourth road district of said township, who drew off separately, and after electing the overseer handed in his name to be recorded by the clerk, as it was. This was done in pursuance of a special law authorizing such a proceeding in that particular township. *Acts* 1856, *p.* 89. It was hence insisted that he was not an overseer of the highways of the township of Upper Alloways Creek, as alleged in the plea, but only an overseer of the fourth district. No such reason

---

* *Rev., p.* 1196, ¿ 16.

appears among those assigned, and it is apparent from the
case that no such objection was made at the trial; if it had
been, it would have been in the discretion of the judge to
admit such amendments of the proceedings as would have
prevented a failure of justice by reason of mistakes and ob-
jections of form, as authorized by the statute. *Nix. Dig.*
641, § 166.* But I do not think the objection ought to pre-
vail, taking the pleadings as they now are. It is manifest
from the whole tenor of the act of 1856, that the overseer, al-
though to be elected as overseer of a particular district, may
be designated as overseer of the township. It is a mere
question of description in the plea, as to which certainty to
a common intent is sufficient.

But the more important question and the one upon which
the merit of this case turns is, did the judge err in overruling
the evidence offered to show that Ferguson had resigned and
was no longer an overseer of the highways? It appeared that
four out of the five members of the township committee, being
together on the ninth of June, 1863, but how convened or
for what special purpose not being shown, a paper was
handed to them signed by W. Ferguson and another over-
seer, as follows: "June 9th, 1863. To township committee
of Upper Alloways Creek. Sirs—This is to inform you that
we, the undersigned, do resign being overseers of the roads
in the aforesaid township." And upon the back of the paper
was the following endorsement, signed by the four committee-
men: "We, the township committee, do accept the resigna-
tion of Robert Wentzell as overseer of roads, and we do
accept the resignation of William Ferguson, jun., overseer of
roads in fourth district." Ferguson testified, I have done
nothing as overseer since the 9th of June, 1863.

There can be no doubt that, as was said in the case of *The
State* v. *Newark*, 3 *Dutcher* 198, the right of resigning an
office or employment is universally recognized in practice and
seems indispensable. If accepted by a power that has a right
to fill a vacancy it becomes complete, and the officer is held
to be no longer capable of acting. But it was insisted in this

* *Rev., p.* 869, § 138.

case, and the stress of the argument for the defendant was rested on the ground that a resignation is complete without acceptance, and for this reliance was had on the broad language of Judge McLean, in the case of *United States* v. *Wright*, 1 *McLean's R.* 513. He there says: "There is no doubt that a civil officer has a right to resign his office at pleasure, and it is not in the power of the executive to compel him to remain in office. It is only necessary that the resignation shall be received to take effect, and this does not depend upon the acceptance or rejection of the resignation by the president." This opinion, however, was a mere *dictum*, and not the point on which the cause was decided, and is entirely without the support of authority, if it is not directly in oposition to prior decisions. The language of the court in the case of *Van Orsdall* v. *Hazard*, 3 *Hill* 245, is, "independently of the co-operation of the appointing power, I take it to be entirely clear that nothing short of some permanent disqualification, such as removal with a view to a change of domicil, or perhaps lasting disability—for instance, paralysis or insanity—can be allowed as itself creating a vacancy." And in 4 *Dever. N. C.* 1, it was held that as offices are held by the will of both parties, if the resignation of an officer be not accepted he remains in office. When the mode of resignation is regulated by statute, as is the case in reference to appointments made by the joint meeting in this state, of course a compliance with the mode pointed out will be sufficient. In the absence of such regulation it would seem the only safe course to require the acceptance of the appointing power, who, in that case, if he deems the public interests require it, will at once fill the vacancy. To hold that an officer, civil or military, may at his own pleasure divest himself of responsibility by simply tendering a resignation, whatever may be the circumstances prompting the act, it seems to me would be fraught with danger of no imaginary magnitude.

But whatever may be the rule in regard to appointments made by the president or by our own state governments, which are generally anxiously sought for rather than avoided,

the law is well settled that offices of municipal corporations can only be resigned, by being made to and accepted by the body having the power at the time to fill vacancies. In these cases the office is considered to be a burthen, as township offices in this state are, and a penalty is imposed for refusal to serve. See the cases cited by Justice Parke in *Rex* v. *Patterson*, 4 *Barn. & Ad.* 15, and collected in *Grant on Corp.* 223, 268, and throughout the work. *Jacob's L. Dic.*, *tit. Resignation.* The industry of counsel has not enabled them to present a single case or *dictum* dissenting from these authorities. Admitting then that an overseer of the highways may resign, or, what is substantially the same thing and referred to in the statute, refuse to serve, neither act will discharge the officer from his duty until the resignation or refusal is properly recognized by some authority having power under the circumstances to fill the vacancy thus made. So important is it justly considered in the case of public corporations and of officers so connected with the administration of local jurisdictions, that in the absence of statutes or by-laws imposing a fine, it was held that a refusal to serve made the officer liable to indictment, and he might be compelled to serve by a *mandamus*. *Grant Corp.* 221, 226. By our act incorporating townships, *Nix. Dig.* 835, § 13,* it is provided that if an officer shall refuse to act, or die or remove, a special town meeting shall be held to fill the vacancy ; and in case of neglect for fifteen days to do so, then the township committee shall, by writing under their hands and seals, appoint a person to fill such vacancy until the next annual town meeting. This power, as indeed are all the powers of the town meeting itself as well as those of the committee, is a special and limited one, and can only be fulfilled in the mode prescribed. Whatever may be the power of the town meeting in this respect, it is clear that the power of the committee is only to fill a vacancy and not to create one. It is of the greatest importance that these bodies be confined to the exact power conferred in express terms. The convenience and even the safety of the public require that every road district shall

* *Rev.*, p. 1201, § 45.

have an overseer, charged with the duty of keeping the road in repair, and liable to heavy penalties for neglecting to do so. This court has repeatedly, by *mandamus*, required the committeee to assign overseers to the districts.

In their haste to violate rather than to fulfil their proper duty, the members of the committee who met, instead of waiting the fifteen days prescribed in the statute, until the expiration of which period they had no power to act in any way, immediately accepted the resignation. In my opinion they had no such power. Had they, after ascertaining that a town meeting had not acted, been properly convened and proceeded to appoint another overseer, the case would have come within the principle adopted in *Rex* v. *Mayor of Rippon,* 2 *Salk.* 433; 1 *Ld. Raymond* 563, and W. Ferguson would have been entitled to a verdict on this issue; although it is a grave question whether his resignation, as well as the action of the committee, would not have been punishable as a contempt if it appeared that the purpose of the proceeding was merely to evade obedience to the *mandamus*, which it was known had then been applied for.

Even if it could be admitted that the committee had power to accept the resignation as they did, it was requisite that the meeting should have been regularly adjourned or that all the members were notified to attend. Meetings of a corporation or of a select body having power to act for them, are not valid in the absence of a statutory mode of notice when all are present, or all are actually summoned to attend. *Rex.* v. *Bailiffs Liverpool,* 2 *Burr.* 723; *Rex.* v. *Mayor of Carlisle,* 1 *Str.* 385; *King* v. *Langhorn,* 4 *Adol. & Ell.* 538; *Grant Corp.* 155. This is not, as counsel insisted, confined to cases of judicial proceedings, but is a rule of great importance, to be observed in all proceedings of such bodies. As a majority form a quorum, and a majority of those present can decide a measure, it follows that in the case of a committee of five the consent of two might effect a purpose to which a majority of the whole, if they had the opportunity of being present, might be opposed.

In my opinion the evidence offered to show that W. Ferguson had ceased to be overseer of the highways of the township of Upper Alloways Creek, by means of the written resignation and acceptance produced, failed to show any such result, and was therefore properly overruled. The rule to show cause should be discharged and final judgment entered for the relators with costs, according to the statute.

VAN DYKE, J., dissented.

CITED in *Love* v. *Jersey City*, 11 *Vroom* 459; *Bolton* v. *Good*, 12 *Vroom* 298.