## TRAPHAGEN v. THE TOWNSHIP OF WEST HOBOKEN.

1. When an inferior tribunal fails to pursue the provisions of a legislative grant and to keep within it, the right of this court to review the erroneous proceedings attaches, and it is beyond the power of the lawmaker to arrest the employment of the appropriate writ for that purpose. A legislative act prohibiting a writ of *certiorari* in such case, is unconstitutional and void.

2. A reasonable time may be limited within which the writ in such case shall be sued out.

3. *Quere.* Whether it is within the range of judicial inquiry to determine what is a reasonable time?

4. Where the provision of the law under which an assessment is made, is unconstitutional, the right of the legislature to limit a time within which a *certiorari* shall issue to review it, doubted.

On *certiorari*.   In matter of widening Palisade avenue.

Argued at November Term, 1876, before Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiffs, *S. B. Ransom.*

For the defendants, *J. B. Vredenburgh.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The purpose of this writ is to review the assessment made upon the lands of the prosecutors, in the improvement of Palisade avenue.

The defendants, admitting that the report of the commissioners fails to certify such facts as are essential, under the

adjudicated cases, to validate their proceedings, rely upon a provision contained in the eighth section of the act under which the improvement was projected, (*Laws*, 1871, *p.* 1029, § 8,) " that no *certiorari* shall be allowed or granted to set aside such assessment after thirty days shall have elapsed from the date of the confirmation of said assessment," and they move to dismiss the writ in this case as improvidently granted after the expiration of the time limited by this act.

The power of the legislature to restrain this court in the use of the writ of *certiorari* to review the proceedings of special statutory tribunals, has been incidentally discussed, but hitherto has not been directly passed upon.

This court, under the ordinance by which it was established August 1st, 1751, and by the common law, being vested with all the common law jurisdiction of the several courts of King's Bench, Common Pleas and Exchequer, in England, through which it derives the right to employ all the remedial writs which belonged to Westminster Hall, in the exercise of their judicial powers, it is important to consider how far the English courts were circumscribed, in their command of the writ of *certiorari*, and what view they have taken of restraining legislation.

In *Rex* v. *Reeve*, 1 *W. Bl.* 231, where the statute provided " that the judgment below should be final, and that no other court should interpose," Lord Mansfield held that this language did not take away the inherent power of the court to issue its writ of *certiorari*, if the action complained of was in derogation, not in pursuance of the law upon which it rested.

In *Queen* v. *The Courts of Cheltenham*, 1 *Q. B.* 467, Lord Denman said : " It is perfectly clear that the proceedings, such as those which took place on the second day, cannot be supported in this court. We have already stated our opinion that the clause which takes away the *certiorari*, does not preclude our exercising a superintendence over the proceeding so far as to see that what is done shall be in pursuance of the statute." The same view was expressed in

*Queen* v. *Sheffield Railway*, 11 *Ad. & El.* 194, and a reference to the cases cited in these books will show that the rule adopted by Lord Mansfield has been adhered to with much uniformity.

These cases are referred to, to show with what tenacity the English courts clung to the exercise of this writ, although there are many instances in which they were compelled to yield to the omnipotence of parliament, when the writ was denied in terms which left no room for judicial interpretation. Their right, however, to send this writ was practically unimpaired when it was transmitted to us.

No one will question the general proposition that the Supreme Court of this state originally had the right, through this writ, to superintend and review the proceedings of all inferior tribunals not proceeding according to the course of the common law. It is true that there are instances in which, prior to the adoption of the present state constitution, hostile legislation has attempted to curtail the use of the writ of *certiorari*, and that our courts have, to some extent at least, recognized the right of legislative interference.

In *Vunch* v. *Whorl*, 1 *Penn.* 335, notwithstanding a provision in the tenth section of the apprentice act, that no writ of *certiorari* should be allowed to remove into the Supreme Court any proceeding had in pursuance of that act, this court held that it was competent by this writ to determine whether the inferior tribunal had exceeded its jurisdiction.

In *Ackerman* v. *Taylor*, 3 *Halst.* 305, Chief Justice Ewing remarks· "that the superintending power of this court, and the use of the writ of *certiorari* are no doubt within the scope of legislative action, and may be restrained, abridged, and, perhaps, abolished." And in the later case of *Ackerman* v. *Taylor*, 4 *Halst.* 65, the same learned judge expresses the more pronounced opinion that " the powers heretofore confided to this court may unquestionably be abridged or taken away by the authority of the legislature." In both these cases, however, the legislative interdiction was held not to bar the inquiry whether the proceedings below had been in pur-

suance of the act, or whether the special jurisdiction had been exceeded.

But it must be observed, that by the old constitution, in force at the time of these adjudications, the court of last resort was the only one which, in express terms, was made indestructible by legislation, and in view of the broad language used by this eminent jurist, he must have been of the opinion that the other courts depended for their continued existence on the legislative will. Surely, the right to withhold from them the power to use the writs through which they executed their functions, implies the right to abolish them.

The question presents itself now in a very different form, since the integrity of the court is secured by the fundamental law.

By force of Section 1 of Article VI. of the new constitution, the nature of the Supreme Court can be altered only by a modification of the constitution itself. Under this constitutional guarantee, the powers which inhered in the court at the formation of the constitution, must be unassailable by legislation.

Asserting its power by means of its prerogative writs, that power would be impaired to the extent that it is restrained in the use of its appropriate process.

The right to deny the employment of one writ, involves the right to deny all, and this would practically abolish the court. In *Harris* v. *Vanderveer's Executor*, 6 *C. E. Green* 427, the Chief Justice says: " It is presumed that no professional gentleman would, for an instant, contend that the legislature could take from the Supreme Court any of those prerogative writs by which inferior jurisdictions are superintended and regulated. The power to do this would involve the power to modify, in essential particulars, the constitution of the court—a power not to be distinguished from an authority to supersede or abolish. It is entirely clear, then, that the legislature has not the competency to impair the essential nature or jurisdiction of any of the constitutional courts. To this extent, it seems to me the subject is too plain for discussion."

Traphagen v. Township of West Hoboken.

So far as the effect upon the court is concerned, it matters not whether the writ of *certiorari* is denied, or a class of cases to which it before extended is attempted to be withdrawn from its operation. In the latter mode the court could be as effectually destroyed as in the former. If one class of cases may be placed beyond the superintending jurisdiction of this court, relief may be denied to the entire class; and if to one class, then to every class. The thing to be preserved is the inherent power of the court to superintend the proceedings of the inferior tribunal; the writ is the mere machinery provided for accomplishing that end. The former is the substance, the latter the shadow—which would be of no avail if the legislature can at will declare that all or any of the subjects to which it can now be directed, shall not, in the future, be reached by it. The contraction of the sphere within which the writ shall operate, is, to the extent of the limitation, the taking away of the writ. As the circle is narrowed, the power of the court diminishes, and the constitutional barrier, which is intended to shield the court from encroachment, is broken. These prerogative writs are the arms of the court, by which every class of subjects over which it exercises its authority, is brought within its jurisdiction, and, therefore, every enactment which materially affects the vigor and reach of those arms, substantially impairs the power of the court. It may be competent for the legislature to enact that the proceedings of a special tribunal shall be final and conclusive, and so long as the granted power is strictly pursued, the legislative will must be respected, but in my opinion, when the inferior fails to pursue the provisions of the grant, and to keep within it, the right of this court to review the erroneous proceeding attaches, and it is beyond the power of the lawmaker to arrest the employment of the appropriate writ for that purpose. Nor must it be understood that the legislature may not substitute for the remedy by *certiorari* that of appeal to the Common Pleas from the judgment of a justice of the peace, for, in that case, this court ultimately supervises the action of the appellate tribunal, and in effect, such legislative

provision would amount to a mere regulation of the remedy. Cases of this character are, therefore, not within the constitutional prohibition. It will also be noticed that the conclusion now reached does not conflict with the class of cases of which *Stanley* v. *Horner*, 4 *Zab.* 511, is an instance. The decision in those cases did not necessarily involve a discussion of the extreme limit of the power of this court under restraining statutes. Assessments of the character of that now certified into this court, furnish no new field for the operation of the writ of *certiorari.*

As along ago as the time of the cases reported in 2 *Keble*, this writ was sent to commissioners of sewers, who made an assessment for their expenses in erecting public works. 2 *Keble* 129.

While the provision of the act of the legislature now under consideration does not inhibit the granting of a *certiorari*, it is insisted that the period of limitation within which it may be sued out is so short as practically to amount to a deprivation of the remedy.

The power of the legislature to regulate remedies, and to enact statutes of repose, by which a reasonable time is prescribed within which suits must be instituted, is too well settled to be discussed.

Whether it is within the range of judicial inquiry to determine what is reasonable time, or whether that question must be left to legislative discretion, it is not necessary in this case to settle, as the limitation is not regarded as an unreasonable one. It is obvious, however, that there may be a point at which it would become necessary for the court to interpose for the preservation of its constitutional powers : where the time of limitation was so short as to amount to a denial of the writ, and to manifest a design on the part of the lawmaker to accomplish by indirection what could not be done in terms.

Section 5 of the act under which the assessment complained of was made, (*Laws*, 1871, *p.* 1029,) providing, according to the rule adopted in 8 *Vroom* 538, a constitutional mode of imposing the burden on the land-owner, I think that the leg-

islature had a right to limit a reasonable time within which the prosecutors should pursue their remedy.

Having failed to appeal to this court within the required time, they are not entitled to be heard.

The view herein expressed is intended to apply only to cases where the provision of the legislative act which authorizes the assessment is constitutional. A very different question will be presented where it is unconstitutional. As was suggested by Justice Knapp, in *State* v. *Comm'rs, &c., of New Brunswick*, 9 *Vroom* 320, it may be doubted whether the legislature can, by a clause of limitation, place its unconstitutional enactments beyond the reach of judicial inquiry, so that the courts are deprived of their inherent power to pass upon their validity. It is difficult to see how the limitation clause can be of higher validity than the principal provision upon which it is engrafted, and upon which it is to operate, or how the legislature, by putting a limit to investigation, can transcend its power, and thus make that, in effect, lawful which is without the slightest authority in law to support it. To hold the limitation in such case inoperative, would be in harmony with the rule that where the provisions of an act are essentially dependent and connected, and some are unconstitutional, all must fall. The true rule may be that the clause of limitation should be applied only to such proceedings as may lawfully be had under the legislative act, and that in so far as the act is void by reason of its unconstitutionality, proceedings taken under color of it, acquire no additional sanction by lapse of time.

The writ of *certiorari* in this case having been improvidently granted, should be dismissed, with costs.