77 N.J. Super. 262 (1962)
186 A.2d 127
CATHERINE O'NEILL, INDIVIDUALLY AND AS EXECUTRIX AND TRUSTEE UNDER THE WILL OF JOHN I. O'NEILL, DECEASED, PLAINTIFF-APPELLANT,
v.
STATE HIGHWAY DEPARTMENT OF NEW JERSEY AND DWIGHT R.G. PALMER, COMMISSIONER OF THE STATE HIGHWAY DEPARTMENT OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1962.
Decided November 26, 1962.
*263 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. John C. Heavey, Jr. argued the cause for appellant (Messrs. Carpenter, Bennett & Morrissey, attorneys; Mr. Heavey, on the brief).
Mr. Robert B. Kroner, Deputy Attorney General, argued the cause for respondents (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney; Miss Marilyn Loftus, Law Assistant, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal from an interlocutory order of the Superior Court, Law Division, striking plaintiff's demand for jury trial in an action in lieu of prerogative writs, R.R. 4:88.
The complaint, in alternative counts, sought to eject defendants, the State Highway Department of New Jersey and its Commissioner, from her lands or to compel condemnation proceedings for the taking of this property. The trial court granted a motion to dismiss the first count on the ground of sovereign immunity.
*264 The second count alleges that plaintiff is entitled to possession of the land described in the complaint; that defendants negotiated with plaintiff for a right of way over her property; that these negotiations were never concluded; that, without notice to the plaintiff, defendants entered upon these premises, constructing a highway, bridge, and other structures; and that defendants have not instituted condemnation proceedings nor paid to plaintiff or into court money representing the fair value of the property as required by applicable statutes. The complaint demands defendants be ordered to institute condemnation proceedings and includes a timely demand for jury trial on all issues.
In their answer, defendants admit that they entered upon part of the land, but deny plaintiff's right to possession of the property in question. They allege that the premises are tidelands, title to which is in the name of the Department of Conservation and Economic Development. Further, they claim that part of the land was conveyed to defendants by plaintiff or her predecessor in title and that part has been in defendants' possession in excess of 20 years, thus barring by estoppel the present action. After filing this answer, defendants moved to strike the demand for jury trial. The motion was granted, and plaintiff was given leave to take this appeal, R.R. 2:2-3(a).
The sole question presented is whether plaintiff is entitled to a trial by jury in a proceeding in lieu of the prerogative writ of mandamus when factual issues are involved. The pertinent rule is R.R. 4:88-2, which provides that:
"Review, hearing and relief heretofore available by prerogative writs * * * shall be afforded by a civil action at law in the Law Division of the Superior Court. Such action shall be tried before a single judge without a jury, except in any case where a jury trial would have been heretofore available * * *." (Emphasis added.)
Consequently, the solution to our problem lies in an understanding of the circumstances under which a jury trial would have been available in mandamus under the practice prior to the adoption of our rules of civil procedure in 1948.
*265 At common law a writ of mandamus was a high prerogative writ directed to any person, corporation or inferior court within the jurisdiction, requiring them to perform some ministerial act pertaining to their office and duty. McKenna v. New Jersey Highway Authority, 19 N.J. 270, 275 (1955); Blackstone's Commentaries (Chase, 4th ed. 1919), pp. 668-70. The writ was generally issued in the alternative form, giving the party to whom the writ was directed an opportunity to show cause why an unchallengable peremptory writ should not be issued. Cause was shown by filing an answering pleading entitled "the return"  the object being to give the opposing party a full hearing on the merits. State ex rel. Kelly v. Mayor, etc., of City of Paterson, 35 N.J.L. 196, 199 (Sup. Ct. 1871); Wood, Legal Remedies of Mandamus and Prohibition, Habeas Corpus, Certiorari and Quo Warranto (1880), pp. 43 et seq.
If the return was insufficient on its face, it was quashed and a peremptory writ was awarded; if sufficient, the peremptory writ was denied. Kenny v. Hudspeth, 59 N.J.L. 504, 527-528 (E. & A. 1896). The return was taken as conclusive; there was no trial of the issues. Layton v. State, 28 N.J.L. 575, 577 (E. & A. 1860); 35 Am. Jur., Mandamus, § 373, p. 112.
To test the facts of a return, a second action was brought to recover damages for making a false return. Layton v. State, supra, 28 N.J.L., at p. 577. An action for a false writ was one of the numerous common law actions on the case for damages. Raker v. Bucher, 100 Cal. 214, 219, 34 P. 654, 849 (Sup. Ct. 1893). In an action on the case, as in other civil actions, disputed questions of fact have always been for the jury's determination. 14 C.J.S. Case, Action On, § 11, p. 14. If relator "obtained a final judgment that the [writ] was false," he simultaneously "vindicated his right to a peremptory writ" of mandamus. Kenny v. Hudspeth, supra, 59 N.J.L., at p. 528.
To simplify this cumbersome procedure requiring two separate actions, England by statute consolidated the proceedings *266 into a single action, 9 Anne, c. 20, § 2 (1710). Originally applicable only to actions involving municipal offices, the statute was amended by 1 Wm. IV, c. 21, § 3 (1831), which extended this unification of action to all other forms of mandamus, Shortt on Informations, Mandamus and Prohibition (1888), §§ 413, 414, pp. 460-1.
Until 1794, New Jersey followed the common law procedure, as modified by 9 Anne, c. 20, § 2. "On December 2, 1794, a statute was passed in New Jersey extending to all cases the procedure described in 9 Anne, c. 20. (Gen. St., p. 2000)." Kenny v. Hudspeth, supra, 59 N.J.L., at p. 529. (Emphasis added.) This statute applied to "any writ of mandamus" and states that, after the return of the writ and at the end of the pleadings,
"such further proceedings, and in such manner, shall be had therein, for the determination thereof, as might have been had, if the person or persons, suing such writ, had brought his or their action on the case for a false return; and if any issue shall be joined on such proceedings, the person or persons suing such writ, shall and may try the same in such place, as an issue joined in such action on the case should or might have been tried; and in case a verdict shall be found for the person or persons suing such writ, or judgment given for him or them upon a demurrer, or by nil dicit, or for want of a replication, or other pleading, he or they shall recover his or their damages and costs, in such manner as he or they might have done in such action on the case as aforesaid; * * *." Laws of the State of New Jersey; Revised and Published under the Authority of the Legislature. Trenton: Printed, for the State, by Joseph Justice, pp. 160-1 (1821). (Emphasis added.)
The result was the consolidation of the separate action on the case with the return of the alternative writ in mandamus and, consequently, a jury trial on disputed questions of fact in a mandamus proceeding.
The statute has, from time to time, been amended, e.g., L. 1870, c. 339; L. 1903, c. 195, § 2. It was revised and consolidated in the 1937 Revision of the Laws of New Jersey, R.S. 2:83-1 et seq. R.S. 2:83-7 retained the essence of the 1794 statute and provided that  after the return and completion of the pleadings  the proceeding should continue "as *267 if the relator had brought an action in the nature of an action on the case for a false return."
As we have seen, R.R. 4:88-2 fixes the relevant date for the availability of a jury trial in a mandamus action at the adoption of the rules of civil procedure in 1948. Therefore, it is of no consequence that this statutory grant of trial by jury in a mandamus proceeding was not enacted in the 1951 Revision of Title 2, L. 1951, c. 344. As the late Chief Justice Vanderbilt commented in Bank of Commerce v. Markakos, 22 N.J. 428, 431 (1956), the purpose of the repeal of the original Title 2 was merely to "strip the statute book of all procedural enactments inconsistent with the rules of procedure theretofore promulgated by the Supreme Court * * *."
Our constitution provides that in proceedings in lieu of prerogative writs "review, hearing and relief shall be afforded in the Superior Court, on terms and in the manner provided by the rules of the Supreme Court, as of right." N.J. Const., Art. VI, § 5, par. 4. In affirming its rule-making power under this constitutional provision, the Supreme Court has noted that:
"The regulation of the remedies so provided is the exclusive province of the Supreme Court; the regulative power is not made subject to legislative action. * * * No distinction is made between the substantive jurisdiction to afford the relief theretofore available through the prerogative writs and the mode and manner of the exercise of the power. The whole is within the exclusive jurisdiction of the Supreme Court. * * * Viewing the specific constitutional grant in its historical and contextual setting, we have no doubt that the purpose was to commit this jurisdiction in its entirety to the newly-organized Supreme Court, free of legislative supervision." Fischer v. Township of Bedminster, 5 N.J. 534, 539, 541, 542 (1950).
See State v. Rivers, 16 N.J. Super. 159, 162 (App. Div. 1951). Therefore, the Supreme Court has the power to continue at its own discretion the former right of trial by jury in a proceeding in lieu of the prerogative writ of mandamus  irrespective of the repeal of the preceding but, since 1948, superseded statutory grant of trial by jury.
*268 In their description of the procedures prior to 1948, the commentators were uniform in their recognition of the availability of jury trial in mandamus cases involving the determination of factual issues. If the return of the alternative writ raised an issue of fact, the Supreme Court in our early cases heard the factual issues with a jury or, under the later practice, sent these issues to be tried at the Circuit Court by a jury. After the Circuit Court trial, a postea  a formal statement of the trial proceedings  was customarily prepared and signed by the trial judge. The Supreme Court then entered judgment in accordance with the jury's verdict or, when the case had been sent to the Circuit Court, with the court's postea. 1 Bradner, New Jersey Law Practice (1940), § 627, pp. 583-4; Harris, Pleading and Practice in N.J. (rev. ed. 1939), § 720, pp. 729-30; Sheen, N.J. Law Practice (2d ed. 1931), vol. I, § 912, p. 673; ibid. vol. II, p. 1090.
That jury trial was available in mandamus proceedings prior to 1948 is demonstrated not only by R.S. 2:83-7 and the commentators but also by a further examination of our reported cases. In State v. Holliday, 8 N.J.L. 265 (Sup. Ct. 1826), the court noted that, where the return to a mandamus produced an issue of fact, the case "is placed in the regular mode of trial." (at p. 267) The factual issue in the mandamus action in Ferguson ads. State, 31 N.J.L. 283 (Sup. Ct. 1865), "was submitted to a jury." (at p. 285) The court in Jones Co. v. Guttenberg, 66 N.J.L. 659 (E. & A. 1901), sent the factual issues raised by the mandamus action to the Circuit Court for trial by a jury. (at p. 665)
See Finger v. Doane, 98 N.J.L. 635, 637 (Sup. Ct. 1923); Harrison R. Van Duyne, Inc. v. Senior, 105 N.J.L. 257 (E. & A. 1928), "* * * such issues were directed to be, and were, tried before a jury at Circuit and a postea showing such findings [had] been filed"; Freeland v. Sargeant, 6 N.J. Misc. 906, 143 A. 73 (Sup. Ct. 1928); Freda v. Societa Di Mutuo Succorso Concordia of Jersey City, 106 N.J.L. 17, 19 (Sup. Ct. 1930), "if the issue be one of fact, as in the present case, it goes to the circuit for a jury trial like any *269 other fact case"; Wenk v. Polish Ladies' Circle, 13 N.J. Misc. 596, 597, 180 A. 229 (Sup. Ct. 1935); Phelps v. Fort Lee, 15 N.J. Misc. 511, 192 A. 581 (Sup. Ct. 1937); Abbott v. Sterner, 124 N.J.L. 49, 50 (Sup. Ct. 1940). In Sagarese v. Holland, 116 N.J.L. 137, 140 (E. & A. 1936), Chancellor Campbell, writing on behalf of the court, said:
"In causes of this character, the facts are to be settled by a jury in a trial at nisi prius under the direction of the Supreme Court justice or, under the present day practice, of a circuit court judge, sitting in his place, and the sole jurisdiction and function of such justice or judge is to make return to the Supreme Court, by postea, of the facts as found by the jury; the settlement of all legal questions residing in the Supreme Court."
In Haycock v. Jannarone, 99 N.J.L. 183 (E. & A. 1923), the factual situation was similar to the instant case. In Haycock a suit was brought to eject the state highway commission as a trespasser from the plaintiff's land. Rejecting the suit on the basis of sovereign immunity, the court commented that the highway commission "can be required by mandamus to take proper proceedings to condemn the land, and in such proceedings the question whether there has been any encroachment can be settled by a jury on a proper issue framed." (at p. 185).
Some of the cases state that the "normal," Freeland v. Sargeant, supra, 6 N.J. Misc., at p. 906, 143 A., at p. 73, or "better," Abbott v. Sterner, supra, 124 N.J.L., at p. 50, practice calls for a jury trial, and they do not expressly state that there is a right to trial by jury in cases such as this. However, this seemingly equivocal language is only a recognition that in many instances a jury may have been waived or simply not requested. Research has failed to produce a single case involving a contested issue of fact in a mandamus proceeding in which a jury was actually denied or even a suggestion made that the possibility of such a denial existed under our statute and case law.
Defendants seek to avoid the preceding statutes and authorities by maintaining that R.R. 4:88-2 only grants a jury trial *270 under those circumstances where the party had a constitutional right to trial by jury in 1948. In support of their position, defendants rely upon the statement of the Tentative Draft Comment on R.R. 3:81-2, the precursor of R.R. 4:88-2:
"The case will be triable without a jury except in those exceptional instances, in quo warranto and mandamus proceedings, where jury trials were available as of right under the old constitution." 2A Waltzinger, New Jersey Practice (1954). (Emphasis added.)
Defendants' interpretation would limit jury trial to those cases in which it was available in 1776. "The right of trial by jury protected in each of our constitutions is the right as it existed at common law and remained on July 2, 1776." Montclair v. Stanoyevich, 6 N.J. 479, 485 (1951). Defendants suggest that this interpretation limits the right of jury trial to those mandamus actions involving public office permitted by the original statute of 9 Anne, c. 20, § 2, supra.
It is axiomatic that where wording is precise and free from ambiguity on its face, there is no need for judicial interpretation, reliance upon extrinsic material, or exercise of discretion. Application of Howard Savings Institution of Newark, 32 N.J. 29, 48 (1960); Gangemi v. Berry, 25 N.J. 1, 10 (1957). The plain wording of R.R. 4:88-2 speaks of mere availability. The key words, which would explicitly require the limitation urged by defendants, are conspicuous by their absence. The language of R.R. 4:88-2 does not even hint at denial of the right, which had existed in New Jersey for 154 years, to a jury trial in a mandamus proceeding involving a contested issue of fact.
In passing, we note that other comments on R.R. 4:88-2 and its predecessor, 3:81-2, have not taken such a restrictive view of the right to jury trial under the new procedure. For example, Judge Jacobs (now Justice) has written that "* * * all proceedings under R.R. 3:81-2 will be tried without a jury, apart from the exceptional instances, in quo warranto and mandamus, where jury trials were available under the old *271 practice * * *." (Emphasis added.) Schnitzer, The New Practice (1949), p. 224. The reference to quo warranto and mandamus as "exceptional instances" may be explained by the fact that, under the old practice, certiorari was by far the most frequently resorted to prerogative writ. For instance, in 1947 there were 3 mandamus, 3 quo warranto and 177 certiorari proceedings. Annual Report of the Administrative Director of the Courts, 1948-1949, p. 121. In addition, the late Fredrick Waltzinger expressed the opinion "that the actions covered by this rule are tried by a single judge unless a jury trial was permitted prior to September 15, 1948 * * *." (Emphasis added.) 2A Waltzinger, supra, at p. 311.
Finally, although the 1944 proposed legislative draft of the constitution and related documents would have expressly eliminated jury trials in all proceedings in lieu of prerogative writs, that version of the constitution was rejected by the electorate. As we have seen, Art. VI, § 5, par. 4 of the 1947 Constitution significantly omits this blanket exclusion of jury trials and leaves this area to the rule-making power of the Supreme Court.
Having reviewed the statute existing in 1948, the authorities on the prior practice, and our reported opinions, we are convinced that a jury trial is available within the meaning of R.R. 4:88-2 where an issue of fact arises in a mandamus proceeding.
The order of the court below is reversed.
GOLDMANN, S.J.A.D. (dissenting).
I must differ from the conclusion reached by my colleagues that a plaintiff in mandamus is in every case entitled to a jury trial as a matter of right, where he has made timely demand therefor. They arrive at that result by a review of the pre-1948 statute (R.S. 2:83-7), reported decisions reflecting the prior practice, and text references. I find it necessary to reconsider some aspects of the problem dealt with in the majority opinion.
R.R. 4:88-2, formerly Rule 3:81-2, reads:
*272 "Review, hearing and relief heretofore available by prerogative writs and not covered by Rules 4:88-7, or 4:88-8, or 4:88-10 shall be afforded by a civil action at law in the Law Division of the Superior Court. Such action shall be tried before a single judge without jury, except in any case where a jury trial would have heretofore been available and demand therefor is filed within 10 days of the service of the complaint." (Emphasis supplied.)
The language is in essence the same as proposed Rule 3:81-2 in the Tentative Draft of the Rules Governing the Courts of New Jersey (March 1948). The comment accompanying the tentative draft of the rule stated that:
"* * * The case will be triable without a jury except in those exceptional instances, in quo warranto and mandamus proceedings, where jury trials were available as of right under the old Constitution. Even in such cases, however, demand for jury must be expressly made in accordance with the rules; otherwise, jury trial will be deemed waived and the case will be triable by the court." (Emphasis supplied.)
R.R. 4:88-1 et seq., dealing with the procedure in lieu of prerogative writs, did not suddenly appear, full-blown and perfected, like Pallas Athene sprung from the head of Zeus. It represented the ultimate solution of a complex problem which had long concerned those interested in the prerogative writ practice. Revision of that practice was dictated by two broad considerations, summarized in the "Report of the Special Committee of the Essex County Bar Association, Concerning Constitutional Revision of the Judicial Article," addressed to the Constitutional Convention of 1947 (4 Proceedings of the Constitutional Convention of 1947, pages 599 ff.):
"* * * (a) the erratic course of justice in prerogative writ proceedings because of practical difficulties in selection of appropriate remedies in specific situations and the existence of archaic, fictional and duplicitous procedures, frequently leading to frustration or delay in effectuation of appropriate remedies, and (b) the absence of an absolute right of judicial review of proceedings of the many statutory quasi-judicial and administrative tribunals, whose determinations are not reviewable other than by the discretionary writ of certiorari." (at page 624)
*273 As to (a), a full exposition of the undesirable situation then existing had been made in a report of the Prerogative Writ Committee of the New Jersey State Bar Association and the Committee on Practice and Procedure in Courts of Appellate and Superior Jurisdiction of the Essex County Bar Association, 69 N.J.L.J. 409 (December 19, 1946). (The recommendations of that report were approved by the Judicial Council of New Jersey in its report to the Governor (R.S. 2:17-8, now repealed), dated December 8, 1947.) See also "Essex Bar Report on Proposed Supreme Court Rules Revision," 69 N.J.L.J. 273 (August 22, 1946), which critically reviewed proposed rules and changes in existing rules which had been recommended by an advisory committee appointed by the former New Jersey Supreme Court, and which appeared in 69 N.J.L.J. 153 (May 16, 1946).
In its report to the Constitutional Convention the Essex County Bar special committee  the only non-Convention committee to devote itself to a comprehensive and reasoned study of a revised Judicial Article  recommended that all prerogative writs be abolished, that an appeal as of right be substituted for the remedy theretofore afforded by certiorari to review determinations of statutory tribunals and inferior courts, and that all other relief theretofore available by any of the prerogative writs be afforded by a civil action as of right. "Issues of fact arising in any such proceedings are to be triable without a jury." 4 Proceedings of the Constitutional Convention of 1947, page 600. The special committee was headed by Milton B. Conford (now an Appellate Division judge) and included some of the leading members of the bar, among them Morris M. Schnitzer, a recognized authority on practice and procedure in our State, and Ward J. Herbert (now a Superior Court judge). Only two members of the committee dissented. They would have left it to the Legislature "to regulate and prescribe the practice and procedure relating to the prerogative writs, and to provide for the elimination of trial by jury, or to substitute a single all-embracive *274 form of action in lieu of the present forms of writs." 4 Proceedings, op. cit., 602 (emphasis added).
In recommending that fact issues arising in any prerogative writ proceeding be triable without a jury, the Essex County Bar special committee said:
"Attempts to draft rules which would permit the court finally to issue such relief as the facts and the law might warrant, notwithstanding the inception of the proceedings under an inappropriate writ in the first instance, have been impeded by the constitutional right of a jury trial in mandamus and quo warranto cases. Despite the full development and hearing of the facts, on depositions before the court, in a proceeding commenced by a writ of certiorari, should the court ultimately decide that the matter was properly reviewable only in mandamus or quo warranto, the court could not proceed to a final determination on the merits, against the objection of a party who might choose to relitigate the factual issues before a jury. * * * In almost all prerogative writ proceedings, the public interest is directly involved and factual disputes are generally closely interwoven with legal issues. It is generally felt, therefore, that no substantial invasion of the principle of trial by jury of legal disputes involving private rights would ensue from rendering all issues in prerogative writ proceedings triable by the court. * * *" 4 Proceedings, op. cit., 625.
The committee referred to the simple, unified procedure adopted by New York by L. 1937, c. 526. New York Civil Practice Act, §§ 1283 et seq. Section 1295 provided that where a triable issue of fact was duly raised, it was to be tried forthwith before a court sitting without a jury, before a referee or, where the proceeding was to review a determination or to compel performance of a duty specifically enjoined by law and a jury trial was demanded on or before the return day, before a court and jury.
The unanimous recommendation of the Essex County Bar special committee to eliminate jury trials in prerogative writ proceedings was not without inspiration. In May 1942 the Commission on Revision of the New Jersey Constitution, appointed pursuant to L. 1941, JR. 2, and of which Arthur T. Vanderbilt (later Chief Justice) and Walter J. Freund (now a judge of this court) were members, recommended as *275 part of the proposed Judicial Article (Art. V, Sec. III, par. 3) that:
"3. Any justice of the Superior Court may grant prerogative writs, returnable in an appellate division which shall otherwise have original jurisdiction relating thereto, and shall determine in such manner as the rules of the Supreme Court may prescribe, and without a jury, questions of fact arising therein; or the hearing may be in the first instance before a single justice, whose decision, both as to law and fact, shall be reviewable by the appellate division." (Emphasis supplied.)
In 1944 the 168th Legislature submitted to the voters of New Jersey for approval and ratification or rejection, as a whole, a revised Constitution whose Judicial Article, Art. V, Sec. III, par. 4, provided that:
"4. Any Justice of the Superior Court or an appellate division thereof may allow prerogative writs returnable in an appellate division which shall determine, in such manner as the rules of the Supreme Court may prescribe, and without a jury, questions of fact arising therein; or, when so prescribed by rules of the Supreme Court, the hearing may be in the first instance before a single justice, whose determination, both as to law and fact, shall be reviewable by an appellate division. On an application for any prerogative writ, the appellate division or the Justice of the Superior Court shall allow such writ as the case shall warrant." (Emphasis supplied.)
The work of the 1942 Commission on Revision of the New Jersey Constitution, as well as that of the 1944 Legislature, provided an effective and enlightening background for all aspects of constitutional revision when the Constitutional Convention assembled in the summer of 1947. Particularly was this so with respect to the Judicial Article. Unquestionably the most influential presentation made to the Convention and its Committee on the Judiciary was that of the Essex County Bar special committee (4 Proceedings, op. cit., pp. 599 ff.), whose thoughtful analysis and recommendations find reflection throughout the present Judicial Article. That Article was the product of the Convention's Committee on the Judiciary, under the chairmanship of Frank H. Sommer, a member of the Essex County Bar and *276 former Dean of New York University Law School. Because of his illness, most of the sessions of the Committee on the Judiciary were presided over by now Justice Nathan L. Jacobs, also of the Essex County Bar, who, at the request of Dean Sommer, submitted the Committee Proposal to the Convention on August 5, 1947, with a recommendation for its adoption. 1 Proceedings, op. cit., p. 146; Report and Proposal, 2 Ibid., p. 1173; and see explanatory report of the Committee, 2 Ibid., p. 1180.
It was generally agreed, and the Constitutional Convention of 1947 so provided, that it would be necessary for the Judicial Article to vest in the new constitutional courts the powers and jurisdiction of the courts supplanted. 1947 Const., Art. XI, Sec. IV, par. 3. Cf. Art. X, Schedule, of the 1844 Constitution; Art. XI, Sec. IV, par. 6 of the 1942 draft, and Art. XI, Sec. IV, par. 6 of the 1944 draft. Such a provision was necessary because it had long been held that jurisdiction over the prerogative writs was exclusively vested in the former Supreme Court; all the essential attributes of such writs had been preserved by the 1844 Constitution and were immutable by the Legislature. State, Dufford v. Decue, 31 N.J.L. 302 (Sup. Ct. 1865); Traphagen v. West Hoboken Twp., 39 N.J.L. 232 (Sup. Ct. 1877); State, Flanagan v. Treasurer of Plainfield, 44 N.J.L. 118 (Sup. Ct. 1882); Green v. Heritage, 64 N.J.L. 567 (E. & A. 1900). Hedden v. Hand, 90 N.J. Eq. 583, 5 A.L.R. 1463 (E. & A. 1919). The former Supreme Court, both under the August 1, 1751 ordinance establishing that court, and by common law, was vested with all the common law jurisdiction of the several courts of King's Bench, Common Pleas and Exchequer in England, from which it derived the right to employ all the remedial writs which belonged to Westminster Hall. Traphagen v. West Hoboken Twp., above, 39 N.J.L., at page 233.
As the majority opinion points out, the writ of mandamus was a high prerogative writ under the early common law in England. It was in use as early as 1307 in the reign of *277 Edward II. Mandamus was an order from the sovereign commanding the party to whom it was addressed to perform the act or duty imposed. It subsequently became an original writ emanating out of the Court of King's Bench where, by legal fiction, the King was always present. Since mandamus was a writ issued under the power of the King, no return was allowed. No jury trial could be permitted to question the authority of the Crown. See Williamsport v. Citizens Water & Gas Co., 232 Pa. 232, 244, 81 A. 316, 320 (Sup. Ct. 1911). This form of peremptory writ was later modified by permitting a return to be filed which, in effect, was a pleading to the writ, thereby changing its character to an alternative writ rather than a peremptory one.
The common law procedure was outlined by Justice Dixon in Kenny v. Hudspeth, 59 N.J.L. 504 (E. & A. 1896), affirming 59 N.J.L. 320 (Sup. Ct. 1896):
"At the common law a peremptory writ of mandamus was always awarded or denied on the return to the alternative writ. If the return was, on its face, insufficient, it was quashed and a peremptory writ was awarded. If the return was, on its face, sufficient, a peremptory writ was denied, unless the relator, by a separate action against the defendant to recover damages for making a false return, obtained a final judgment that the return was false and so vindicated his right to a peremptory writ. On an award of the writ in such proceedings error would not lie. * * *
The same rule holds in New Jersey, when [where?] the common law procedure is followed. * * *" (59 N.J.L., at pages 527-528)
Clearly, even under this procedure no jury was allowed; it was for the judge, and the judge alone, to determine whether the return was sufficient in deciding for or against the issuance of a writ. Layton v. State, 28 N.J.L. 575, 577 (E. & A. 1860).
Under this proceeding, as pointed out in the Kenny and Layton cases, the relator was driven to his action for a false return, and if he recovered judgment in that action, the writ of mandamus issued. The writ was awarded, not by virtue of any decision in the proceedings for a mandamus, but upon a determination of the right in another action.
*278 The only significant change in the procedure which prevailed in England prior to our Revolution of 1776 was the statute of 9 Anne, c. XX (1710). That statute was designed to make mandamus proceedings "more speedy and effectual, and for the more easy Trying and Determining the rights of Offices and Franchises in Corporations [i.e., Cities and Towns Corporate] and Boroughs," by compelling a prompt return to the alternative writ, and by enabling a relator, if he saw fit, to traverse the return and thus draw in issue the question of right. The relator could plead to or traverse all or any of the material facts contained in the return, and the person making the return could reply, take issue or demur. The statute then went on to provide:
"* * * And such further Proceedings, and in such Manner shall be had therein, for the Determination thereof, as might have been had if the Person or Persons suing such Writ had brought his or their Action on the Case for a false Return; and if any Issue shall be joined on such Proceedings, the Person or Persons suing such Writ shall and may try the same in such Place as an issue joined in such Action on the Case should or might have been tried; and in case a Verdict shall be found for the Person or Persons suing such Writ, or Judgment given for him or them upon a Demurrer, or by Nil dicit, or for want of a Replication or other Pleading, he or they shall recover his or their Damages and costs in such Manner as he or they might have done in such Action on the Case as aforesaid; * * * and a preemptory Writ of Mandamus shall be granted without Delay, * * *."
In short, the Statute of Anne permitted the action for the trial of false return to be combined with a hearing on the application for the writ. However, this procedure was available only in those cases brought to determine the rights of offices and franchises, in cities, towns corporate and boroughs. In all other proceedings involving mandamus (the statute also covered informations in the nature of quo warranto), the procedure remained as before. See Kenny v. Hudspeth, above, 59 N.J.L., at page 528, which spoke of the Statute of Anne as applicable "in the cases which it covered." The limited application of the statute illuminates the reference in the drafter's comment on proposed Rule 3:81-2 (now R.R. *279 4:88-2) that proceedings in lieu of prerogative writs were to be triable without a jury "except in those exceptional instances, in quo warranto and mandamus proceedings, where jury trials were available as of right under the old Constitution."
Article XXII of our first Constitution, adopted July 2, 1776, continued in force the common law of England as well as so much of its statute law as had theretofore been practiced in the colony, and confirmed the right of trial by jury as part of our law, without repeal, forever. Thus, at the time New Jersey became a state, jury trials in mandamus proceedings were limited to the specific instances set forth in the Statute of Anne. Only in those instances could a jury be demanded as a matter of right.
The substance of the Statute of Anne was adopted in New Jersey by act of December 2, 1794. Paterson's Laws, 143. However, that act enlarged upon the Statute of Anne because it was applicable in all cases of mandamus. (In 1831 England enacted a similar law, 1 Wm. IV, c. 21, § III.) The 1794 statute was supplemented by L. 1870, c. 339. It was revised by L. 1903, c. 195, and carried over into the Revision of 1937 as R.S. 2:83-1 et seq. R.S. 2:83-7, dealing with pleadings following the return to a writ of mandamus and joinder of issues, and providing for such further proceedings "as if the relator had brought an action in the nature of an action on the case for a false return," was taken almost verbatim from the Statute of Anne.
Thus, after 1794 and at the time of the adoption of our Constitution of 1947, the Legislature authorized jury trials of factual issues in mandamus proceedings. Although some courts conceded that the Legislature had power to regulate the "remedy" in a prerogative writ case, see Traphagen v. West Hoboken Twp., above, 39 N.J.L., at page 237, the matter was not beyond challenge. Thus, in Traphagen, which involved a statute (L. 1871, Special Public and Private Laws, c. 395, p. 1029, § 8) providing that certiorari could not be granted to set aside an assessment after 30 days from the *280 date of its confirmation, the court by-passed the question of whether the time limitation could be left to legislative discretion by concluding that the limitation was not an unreasonable one. However, Justice Van Syckel went on to say it was obvious that "there may be a point at which it would become necessary for the court to interpose for the preservation of its constitutional powers: where the time of limitation was so short as to amount to a denial of the writ * * *."
In view of the jealously guarded exclusive authority of our former Supreme Court in the field of prerogative writs, the most that can be said for R.S. 2:83-7, which stemmed from the act of 1794, was that the Legislature established a mode of procedure in a mandamus case, but it did not create a right to jury trial, in a constitutional sense. What it did was to permit the former Supreme Court to send factual issues to nisi prius for jury determination. Following such determination, the record was then returned to the Supreme Court for its decision on whether the writ of mandamus should issue.
None of the cases reviewed in the majority opinion holds that the mode of trying factual issues in a mandamus case before a jury, allowed by legislation, established a constitutional right to a jury trial. Nor have I been able to discover any such case. The courts appear simply to have followed the pattern fixed by the Legislature. For example, State v. Holliday, 8 N.J.L. 265, 267 (Sup. Ct. 1826), speaks of the case being placed "in the regular mode of trial." Freeland v. Sargeant, 6 N.J. Misc. 906, 143 A. 73 (Sup. Ct. 1928), refers to the practice of ascertaining the facts as "normally" calling for a trial by jury. The court in Phelps v. Fort Lee, 15 N.J. Misc. 511, 512, 192 A. 581, 582 (Sup. Ct. 1937), appeal dismissed 119 N.J.L. 453 (E. & A. 1938), said that it was "the usual practice" where there was a fact issue in mandamus, to refer the matter to the Circuit Court for trial before a jury. And in Abbott v. Sterner, 124 N.J.L. 49, 50 (Sup. Ct. 1940), the court stated that the relators in mandamus might proceed with depositions, or "the better practice" *281 was to frame an issue and have the facts determined "either by court or jury."
Some of the cases cited in the majority opinion actually did not require a jury trial. For example, in the leading case of Kenny v. Hudspeth, above, where the procedure was outlined by Justice Dixon, there was no jury trial, the issue being determined by the court on demurrer. In State v. Holliday, 8 N.J.L. 205 (Sup. Ct. 1825), further opinion at 8 N.J.L. 265 (Sup. Ct. 1826), involving the office of overseer of highways, there was no jury trial because of a motion to quash the writ, thereby admitting the facts.
State, Reeves v. Ferguson, 31 N.J.L. 107 (Sup. Ct. 1864), further opinion at 31 N.J.L. 283 (Sup. Ct. 1865), presented the factual issue of whether Ferguson was actually overseer of the highways in his township. Althought the court did not refer to the right of trial by jury, the case was properly sent to a jury since it came within the terms of the Statute of Anne, involving as it did the trial of an office. Similarly, in Freda v. Societa DiMutuo, etc., Jersey City, etc., 106 N.J.L. 17 (Sup. Ct. 1930), a member of the society sought reinstatement by mandamus, much the same as an officer would seek determination of his right to an office. Although the court mentioned that the matter would go to the Circuit for a jury trial when and if an issue of fact was joined, the case  no more than any other case we have been able to find  does not speak of the guarantee of a right to trial by jury.
R.S. 2:83-1 et seq., relating to mandamus, was not reenacted when Title 2A was adopted, effective January 1, 1952. Whatever the Legislature had in the past provided by way of practice and procedure in mandamus cases was no longer of force and effect. The Legislature left matters of practice and procedure to the rules adopted and to be adopted by the Supreme Court. This was in keeping with the provision of the 1947 Constitution, Art. VI, Sec. V, par. 4, which provided:
"Prerogative writs are superseded and, in lieu thereof, review, hearing and relief shall be afforded in the Superior Court, on terms *282 and in the manner provided by rules of the Supreme Court, as of right, except in criminal causes where such review shall be discretionary."
This constitutional provision went further than Art. VI, Sec. II, par. 3, which gave the Supreme Court power to make rules "governing the administration of all courts in the State and, subject to law, the practice and procedure in all such courts." And see Winberry v. Salisbury, 5 N.J. 240 (1950). The rule-making authority of the Supreme Court in the prerogative writ field was not "subject to law." It could therefore adopt rules dealing with the former prerogative writs, both substantively and adjectively. Fischer v. Bedminster Tp., 5 N.J. 534, 541 (1950). It proceeded to do so in the rules promulgated on September 15, 1948.
The first of these rules, 3:81-1 (now R.R. 4:88-1), cut through the confusion and relative ineffectiveness that had attended certain aspects of the former prerogative writ practice. Following out what had been discussed at the Constitutional Convention, the Supreme Court provided that prerogative writs were superseded, and in lieu thereof, review, hearing and relief might be had as of right in the Superior Court in the manner provided by the rules. Rules 3:81-1 et seq. (now R.R. 4:88-1 et seq.). Thus, there was an immediate effectuation of Art. VII, Sec. V, par. 4 of the 1947 Constitution. The court also adopted, along with other rules relating to proceedings in lieu of former prerogative writs, Rule 3:81-2 (now R.R. 4:88-2), the rule which lies at the heart of this appeal.
What did the draftsman of this rule have in mind when he said that actions in lieu of prerogative writs were to be tried before a single judge without a jury, "except in any case where a jury trial would have heretofore been available" and a demand therefor had timely been filed?
The drafting of the proposed rules was delegated by Chief Justice Designate Vanderbilt to different members of the bar who respectively had the interest and specialized ability to prepare a particular section of the rules. I was a member of *283 that group. The rules relating to proceedings in lieu of prerogative writs were committed to Mr. (now Justice) Jacobs, whose active participation in the drafting and presentation of the Judicial Article has already been mentioned. (See Proceedings of the First Judicial Conference, September 13, 1948, Rutgers L. Rev., Special Number, 1948, p. 4, remarks of Chief Justice Designate Vanderbilt.) He proceeded to draft proposed Rules 3:81-1 et seq. in consultation with others who had a particular competence in the prerogative writ field. Among them were Mr. William J. Brennan, Jr. (later Justice of our Supreme Court and now Associate Justice of the U.S. Supreme Court), Mr. (now Judge) Milton B. Conford, Mr. Herbert J. Hannoch and Mr. Morris M. Schnitzer.
In drafting Rule 3:81-2 (now R.R. 4:88-2) Justice Jacobs undoubtedly had fresh in mind the recommendations of the 1942 Commission on Revision of the New Jersey Constitution, the 1944 legislative draft which failed of adoption by the electorate, and the thoughtful exposition of the Essex County Bar special committee report, considered by the Judiciary Committee on which he so recently had sat. All of these eliminated trial by jury in prerogative writ proceedings. He knew, of course, of the statutory provision, R.S. 2:83-7  soon to be dropped by the Legislature when it brought Title 2A into conformance with the rules  which permitted a jury trial in mandamus proceedings; and was familiar with the usual mode of procedure followed by the courts under that statute in the cases to which the majority opinion and I have referred. But he was obviously sensitive to the fact that a constitutional right to jury trial still obtained in certain situations, albeit extremely limited in number. This entirely explains his comment, which accompanied and must be read in connection with proposed Rule 3:81-2 as it appeared in the Tentative Draft, namely, "[t]he case will be triable without a jury except in those exceptional instances, in quo warranto and mandamus proceedings, where jury trials were available as of right under the old Constitution."
*284 The same problem of preserving the right to a jury trial in an exceptional case underlies the remarks which Justice Jacobs made before the New Jersey Institute for Practicing Lawyers in 1949, when, in commenting on former Rule 3:81-2, he said:
"* * * This action will be tried by the judge sitting without a jury; indeed, all proceedings under Rule 3:81-2 will be tried without a jury, apart from the exceptional instances, in quo warranto and mandamus, where jury trials were available under the old practice and demand therefor had been filed within 10 days of the service of the complaint." (Schnitzer, ed., The New Practice, p. 224 (1949))
The majority seeks to explain the words "exceptional instances" in the comment to Tentative Rule 3:81-2 and in Justice Jacobs' remarks by indicating that certiorari was by far the most frequent prerogative writ under our former Supreme Court practice, mandamus and quo warranto coming before the court in only a very few instances. I find that explanation unacceptable. To repeat, the comment to the proposed rule was that an in lieu case would be triable without a jury "except in those exceptional instances, in quo warranto and mandamus proceedings, where jury trials were available as of right under the old Constitution," where timely demand for a jury trial was made. If the draftsman meant that there would be no jury trial except in quo warranto and mandamus proceedings, he could have said so in his comment, and in exactly those words. But that is not what he said. The language of the comment clearly points to an awareness of those particular cases in mandamus and quo warranto where a jury trial was constitutionally guaranteed. The reference must be to the "Rights of Offices and Franchises in Corporations and Boroughs," mentioned in the title of 9 Anne, c. XX.
The only right to jury trial in a mandamus proceeding is that which was "confirmed, as part of the law of this colony, without repeal, forever," by our Constitution of 1776, Sec. XXII. The fact that the law of December 2, 1794, later *285 preserved in R.S. 2:83-7, was passed after the adoption of the 1776 Constitution and before that of 1844, which in Art. I, par. 7 said that the right of trial by jury "shall remain inviolate," does not alter the matter. Nor does the provision of Art. I, par. 9 of the Constitution of 1947, repeating the language of the 1844 Constitution.
The Supreme Court dealt with a statutory situation somewhat analogous to ours in Montclair v. Stanoyevich, 6 N.J. 479 (1951). Justice Case, a profound student of the common law, there reviewed the cases and held in the clearest language that "The right of trial by jury protected in each of our Constitutions is the right as it existed at common law and remained on July 2, 1776." (at page 485)
The climate of opinion surrounding the drafting of former Rule 3:81-2  a climate established by the most expert opinion available at the time  was that jury trials in prerogative writ proceedings, if not abolished altogether, be kept within as narrow a compass as possible. Only the right to jury trial permitted under the Statute of Anne and preserved by our Constitution of 1776 dictated the limiting language of the rule  "except in any case where a jury trial would have heretofore been available."
It should be observed, in passing, that although the Supreme Court rules have carefully preserved the constitutional right to jury trial, the original rules (Rule 3:38-1, later R.R. 4:39-1) permitted parties appearing in a civil action, or such of them as appeared at the trial or their attorneys of record, to waive trial by jury either by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record. Later revisions of the rules relating to jury trials provided that any party might demand a trial by jury "of any issue triable of right by a jury, by serving upon the other parties a demand therefor in writing at any time before the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue." The demand was to be endorsed upon a pleading of the party. R.R. 4:39-1. And *286 R.R. 4:39-3 provided that the failure of a party to serve a demand was to constitute a waiver by him of jury trial.
Jury trials in civil actions are relatively infrequent in England. The thought has been expressed in this country, and on occasion by some members of our own bar, that jury trials in civil actions have only a limited utility, particularly in cases involving complex factual situations or extremely technical expert opinion, or in special proceedings.
Judges daily sit without a jury in determining factual issues in a wide variety of cases. See R.R. 4:40-2. I find no reason (nor does the majority) to question their competence in arriving at a fair determination of any proceeding in lieu of prerogative writs. If need be, the judge, upon motion or on his own initiative, "may try with an advisory jury any issue not triable of right by a jury, or * * * may, with the consent of all parties appearing at the trial, order a trial of any such issue with a jury whose verdict has the same effect as if trial by jury had been a matter of right." R.R. 4:40-1. Aside from all else, I see no prejudice visited upon a party in having his in lieu proceeding tried to a single judge without a jury.
I must therefore conclude that the reference to a jury trial in R.R. 4:88-2 is limited to those proceedings specifically mentioned in the Statute of Anne. Despite the practice under our post-Revolution statutes, there is no constitutional right to a jury trial in an in lieu action such as the present one, brought to compel condemnation of plaintiff' lands.
One additional comment. In granting defendants' motion to strike plaintiff's demand for a jury trial, the trial judge in his order stated he was "of the opinion that this is an action in which the sole question is whether the land in dispute is Tide Land." This overlooks the obvious fact that the answer raised three factual issues. First, defendants claimed that the land in question was tideland, title to which was in the Department of Conservation and Economic Development. (For recent cases presenting fact questions inherent in tidelands litigation see Leonard v. State Highway Department, *287 29 N.J. Super. 188 (App. Div. 1954); Bailey v. Driscoll, 34 N.J. Super. 228 (App. Div. 1955), reversed 19 N.J. 363 (1955); Bailey v. Council of Division of Planning and Development, etc., 22 N.J. 366 (1956); Schultz v. Wilson, 44 N.J. Super. 591 (App. Div. 1957), certification denied 24 N.J. 546 (1957); Yara Engineering Corp. v. N.J. Turnpike Authority, 49 N.J. Super. 603 (App. Div. 1958), certification denied 27 N.J. 398 (1958); River Development Corp. v. Liberty Corp., 45 N.J. Super. 445 (Ch. Div. 1957), affirmed 51 N.J. Super. 447 (App. Div. 1958), affirmed 29 N.J. 239 (1959)). Second, defendants claim that part of the land was conveyed to them by plaintiff or her predecessor in title. Finally, they allege they have been in possession of part of the land for over 20 years, so that plaintiff is now estopped from bringing this action. All of these defenses require factual resolution.
I would affirm the order under appeal.