FREDERICK C. BAILEY, PLAINTIFF-APPELLANT, v. COUNCIL OF THE DIVISION OF PLANNING AND DEVELOPMENT OF THE DEPARTMENT OF CONSERVATION AND ECONOMIC DEVELOPMENT OF THE STATE OF NEW JERSEY AND CHARLES T. KLINE, JR., DEFENDANTS-RESPONDENTS.

Argued October 8, 1956—Decided October 29, 1956.

*Mr. Chester Mueller* argued the cause for the plaintiff-appellant.

*Mr. David D. Furman,* Deputy Attorney-General, argued the cause for the defendant-respondent Council of the Division of Planning and Development (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey, attorney).

*Mr. Vincent A. Grasso* argued the cause for the defendant-respondent Charles T. Kline, Jr.

The opinion of the court was delivered by

BURLING, J. The factual background of this case is developed in *Bailey v. Driscoll,* 34 *N. J. Super.* 228 (*App. Div.* 1955), reversed 19 *N. J.* 363 (1955). Plaintiff Bailey owns land which extends out into Barnegat Bay in the Ortley Beach section of Dover Township in Ocean County, New Jersey. The land in question was formerly an island, westerly of and separated from the mainland by a tidewater creek (known as Muscrat Creek) which originated and terminated in Barnegat Bay, encompassing the island in a semi-circular fashion.

Ocean County then constructed Bay Boulevard, running generally in a north-south direction, a portion of which was laid out in the bed of Muscrat Creek. This served to bring

the mainland a considerable distance closer to the easterly tip of Bailey's island. Fill was used to shore up the westerly line of the boulevard and was so liberally applied that Bailey's land was transformed from an island into a peninsula.

When this case was before us during the last term we conceived the characteristics of the terrain to be this: If one were to stand on the connecting fill immediately joining the easterly tip of Bailey's island to the mainland, observing either in a northerly or southerly direction, he would see the waters of Muscrat Creek which but for the fill would be joined. Beyond the creek waters, in either a northerly or southerly direction, one would observe westerly projections of mainland.

These mainland projections (which lie west of Bay Boulevard) are owned by defendant Kline, or at least those portions which lie directly north and south of the connecting fill. By virtue of this "riparian" ownership Kline applied for a grant of land "under the tide waters of said Muscrat Creek lying adjacent to and in front of the premises above described" to the Council of the Division of Planning and Development of the Department of Conservation and Economic Development of the State of New Jersey. The application was approved and a grant of lands "now or formerly flowed by tidewater * * * of Muscrat Creek" was executed. The grant encompassed, for the most part, the area lying between the easterly tip of Bailey's land and the westerly line of Bay Boulevard and extending in a northerly and southerly direction to Kline's mainland properties. We assumed that the grant included both submerged and filled lands, not only from the terms of the application but the grant itself, the aerial photographs and a map which were made a part of the record, and this in the light of a contrary indication in the opinion of the Appellate Division, 34 *N. J. Super.*, at 239. Because Kline thereby came into ownership of a portion of the connecting fill between Bailey's former island and Bay Boulevard, Bailey was precluded from gaining access to the highway.

The precise question decided in *Bailey v. Driscoll*, 19 *N. J.* 363 (1955), was whether the Legislature imposed any limita-

tion upon the outward extent of a riparian grant. We recognized that such grants were to be limited in outward extent by the establishment of exterior lines, that such lines were to be established so as to delineate navigable waters and that access to such waters was a primary consideration and inherent purpose in grants of land flowed or formerly flowed by tidewater. We directed a remand to the Superior Court, Chancery Division for the purpose, *inter alia,* of

"* * * entering judgment upholding the validity of the riparian grant to defendant Kline to the extent it is not transgressed by the exterior lines to be established by the Council, and without prejudice to either plaintiff Bailey or defendant Kline to institute proceedings to review the action of the Council which is contemplated by this decision."

The Planning and Development Council immediately sought to carry out the court's mandate. A field survey was conducted in the Ortley Beach section in the area of Muscrat Creek and Barnegat Bay to establish high water lines, channels, waterways and filled land. An exterior pierhead and bulkhead line was established off the two portions of Kline's mainland previously adverted to and westerly of Bay Boulevard, which resulted in decreasing the size of Kline's grant in some measure but insufficient to allow Bailey access to Bay Boulevard. The latter was notified of the establishment of the exterior line and now challenges the action of the Council as arbitrary. An appeal was addressed to the Appellate Division and we certified the cause prior to an appellate review below.

It is now apparent that the grant to Kline encompassed only lands formerly flowed by the tidewaters of Muscrat Creek, *i. e.,* filled lands entirely, spreading from the westerly line of Bay Boulevard to a point considerably beyond the westerly line of the grant. The Council, in establishing the exterior line undertaken on the remand, has charted out a prospective waterway which it states will be usable by boats of shallow draft after the fill is removed. We are informed that this fill is illegal because the State, acting through the Council, has never given permission to Ocean County to

deposit fill from its road construction on the adjoining state lands which were under tidewater. *Cf. R. S.* 12:3–4. The Council recognized the existence of some fill in the grant to Kline, however, for the instrument recites:

"THIS GRANT IS MADE AND ACCEPTED with full cognizance of the parties hereto of the existence upon the lands hereinabove described of the artificial fill placed upon the lands by the County of Ocean for the protection of Bay Boulevard."

Whether the grant consisted of submerged and filled ground or solely of filled ground is not of moment. We recognized in our prior decision that lands formerly flowed by tidewater might be conveyed by the Council pursuant to *R. S.* 12:3–12, and the limitation on outward extent is based upon the establishment of exterior lines in either situation by the express terms of *R. S.* 12:3–12. *Bailey v. Driscoll, supra,* 19 *N. J.,* at *pages* 371–372.

Plaintiff Bailey takes no issue with the charge that this fill is illegal. He does challenge the delineation of Kline's grant by the establishment of the exterior line off the mainland on several grounds:

1. The exterior line between Bailey's land and Bay Boulevard does not delineate navigable waters because there are presently no waters within this area;
2. That the establishment of the exterior line does not fulfill the purpose of the grant in affording Kline access to navigable waters;
3. That even if the illegal fill is removed the exterior line as now established will only provide a channel of a minimum width of 35 feet easterly of Bailey's land whereas on the northerly and southerly exposure of the former island a 70 foot waterway is laid out.

Further complaint is made that Bailey is still denied access to Bay Boulevard and the public as well to the waters of Barnegat Bay via Bailey's island at this point and that no hearing was afforded plaintiff before the line was established.

The Council contends that it performed a *quasi*-legislative act in establishing the exterior line, committed to its expert discretion and correctable only where an abuse of the power

is plainly evident. It denies any abuse of the power. The exterior line as established is said to delineate an adequate waterway navigable by small boats once the illegal fill is removed, that preciseness of adjustment is a matter for the Council and that the "overriding concern is the enrichment of the fund held in trust for public education by *R. S.* 18:10–5, 6" to which revenues obtained from the sale or lease of riparian lands are deposited. It is extensively denied that the Council is obliged to conduct a hearing prior to the establishment of exterior bulkhead and pier lines on tidewaters throughout the State.

We entertain no doubt that the Council acts in a legislative capacity in the establishment of exterior lines upon the tidewaters of this State. Normally, these lines would be established prior to a riparian grant which itself has been characterized as a *"quasi*-legislative" act, *Bailey v. Driscoll, supra,* 34 *N. J. Super.,* at *page* 244. Our function in these matters is to determine whether the legislative power delegated to the Council has been exercised within the bounds of the discretion accorded it. *Attorney-General v. Goetchius,* 142 *N. J. Eq.* 636, 641–642 (*Ch.* 1948); accord *Burnett v. Abbott,* 14 *N. J.* 291, 295 (1954); *McKenna v. New Jersey Highway Authority,* 19 *N. J.* 270, 283 (1955); *cf. Carls v. Civil Service Commission,* 17 *N. J.* 215, 221 (1955).

The pertinent statutes governing the establishment of exterior pier and bulkhead lines do not require a preliminary hearing, nor do the demands of procedural due process. Accord *Jamouneau v. Harner,* 16 *N. J.* 500, 522 (1954). However, the appendix which has been jointly submitted by the parties contains nothing upon which we can properly assay the action of the Council. A similar situation was presented in *McKenna v. New Jersey Highway Authority, supra,* where we were called upon to determine the validity of highway tolls which had been levied by the Authority. The record was insufficient to make the determination and it was necessary to remand the cause in order that a full record might be made.

A similar course is required here. The appendix includes excerpts from the minutes of two meetings of the Planning and Development Council, letters between the various parties involved, and an affidavit of the Chief of the Bureau of Navigation of the Division of Planning and Development. The latter person states that he "discussed the reason for the recommendation of the exterior lines * * * as being in the due interests of navigation" at a meeting of the Council, but nowhere are we informed of these reasons which were deemed a sufficient foundation for the ultimate determination. It is true, as argued in the Council's brief, that the exterior line establishes a prospective navigable waterway. But assuming the illegal fill will be removed does the exterior line as delineating Kline's grant exceed the purpose of access to navigable waters? And how prospective is the contemplated waterway, *i. e.*, is Ocean County to be required to remove that portion of fill which is illegal? Does the value to Kline in obtaining an extensive grant (and considering the purpose of such grants) outweigh the exclusion of convenient access from Bailey's land to Bay Boulevard and the resultant impact upon the beneficial development of that land? Was due regard given to the interests of navigation (*R. S.* 12:3–10) in establishment of a 35-foot in width channel? The discretion accorded this agency of the State is geared to something more than the enrichment of the school fund, although we entertain no doubt whatsoever that our prior mandate was undertaken with utmost care and good faith. Our only search is for the basis of the action taken.

This court has previously pointed out that a state agency determination which is essentially judicial in nature is appealable under *R. R.* 4:88–8, while *R. R.* 4:88–10 was designed to deal with *quasi*-legislative or rule-making functions. *Carls v. Civil Service Commission, supra,* 17 *N. J.,* at *pages* 219–220. The distinction is not pressed to the point of prejudice against litigants who pursue one course rather than the other. *McKenna v. N. J. Highway Authority, supra,* 19 *N. J.,* at *page* 276. In either case there

must usually be some supporting basis for the agency determination, order or rule. Note the provisions of *R. R.* 4:88–8, 10; *Adams Theatre Co. v. Keenan,* 12 *N. J.* 267, 278–279 (1953); *Family Finance Corp. v. Gough,* 10 *N. J. Super.* 13, 23–25 (*App. Div.* 1950). But *cf. In re Port Murray Dairy Co.,* 6 *N. J. Super.* 285, 293–294 (*App. Div.* 1950).

The void which is apparent here was formerly accommodated to a great extent on the *certiorari* practice by the former Supreme Court by directing the taking of depositions, *Ward v. Keenan,* 3 *N. J.* 298, 305–308 (1949), but our new in lieu practice under *R. R.* 4:88–8 and 10 does not include it. *McKenna, supra,* 19 *N. J.,* at *pages* 277–278. *R. R.* 4:88–9 and 11 provide that additional evidence may be taken before the agency or a judge of the trial division of the Superior Court.

This court takes no pleasure in "marching the king's men up the hill and then marching them down again," J. Frankfurter, dissenting, *City of Yonkers v. United States,* 320 *U. S.* 685, 694, 64 *S. Ct.* 327, 332, 88 *L. Ed.* 400, 405 (1944). We seek where it is conscientiously possible to resolve the controversy without a remand, especially where the agency act in question represents essentially a legislative function. *Cf. Pennsylvania Railroad Co. v. Department of Public Utilities,* 14 *N. J.* 411 (1954). Yet even in weighing this consideration it must always be inquired whether a final judicial disposition of the cause might encroach upon the agency whose expertise is to be exercised within its sphere of action. *In re Plainfield-Union Water Co.,* 11 *N. J.* 382, 395–396 (1953); *Tompko v. Vissers,* 21 *N. J.* 226, 241 (1956). Where purely legal issues can be resolved in spite of a factual deficiency in the record, a portion of the controversy can be resolved but remaining questions must often await a remand. *Abbotts Dairies, Inc., v. Armstrong,* 14 *N. J.* 319 (1954).

Here we cannot conscientiously pass upon the Council's undertaking. "We must know what a decision means before the duty becomes ours to say whether it is right or wrong."

Cardozo, J., in *United States v. Chicago, M. St. P. & P. R. Co.,* 294 *U. S.* 499, 511, 55 *S. Ct.* 462, 79 *L. Ed.* 1023, 1032 (1935); *McKenna v. N. J. Highway Authority, supra,* 19 *N. J.,* at *page* 283.

■ Administrative agencies are always expected to exercise their prerogatives upon reasoned judgment. It is especially important that the ingredients of this reasoned judgment be transposed into a supporting record when an agency is informed that its action in a particular matter will likely be challenged (*e. g.,* the instant controversy) and the act or determination is a proper subject for judicial review. The agency must then gird itself by preparing an appropriate *ex parte* record or, where statutory or practical considerations so require, a record based upon a preliminary hearing of the controversy. Consider *Adams Theatre Co. v. Keenan, supra; McKenna v. New Jersey Highway Authority, supra; Family Finance Corp. v. Gough, supra; Bergsma v. Town of Kearny,* 24 *N. J. Super.* 43 (*App. Div.* 1952); *Metropolitan Motors v. State,* 39 *N. J. Super.* 208 (*App. Div.* 1956).

■ Without a present determination of the merits and for the reasons herein expressed, the action of the Council of the Division of Planning and Development in the establishment of the exterior lines under review is set aside and the cause will be remanded to the Council for the basic determinations and ultimate conclusion contemplated by this opinion. In view of the particular factual aspects of this case, a hearing should be conducted upon notice to Bailey, rather than the formulation of an *ex parte* record.

*For reversal and remandment*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING and JACOBS—5.

*For affirmance*—None.