134 N.J. Super. 588 (1975)
342 A.2d 540
CITY CONSUMER SERVICES, INC., A CORPORATION ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
DEPARTMENT OF BANKING, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 1975.
Decided June 23, 1975.
*591 Before Judges CARTON, CRANE and KOLE.
Mr. John P. Sheridan, Jr. argued the cause for appellant (Messrs. Cahill, McCarthy and Hick, attorneys).
Mr. Michael E. Goldman, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Richard M. Conley, Deputy Attorney General, of counsel).
Messrs. Miller, Myers, Matteo and Rabil filed a brief for amicus curiae, New Jersey Savings League (Mr. Michael D. Matteo on the brief).
PER CURIAM.
This appeal involves an attack on a regulation of the Commissioner of Banking, N.J.A.C. 3:18-8.1.
The Secondary Mortgage Loan Act, N.J.S.A. 17:11A-34 et seq. (the act), directed at potential abuses of borrowers by second mortgage lenders, subjects the lenders to licensing and other rigid supervision by the State Commissioner of Banking (Commissioner). Oxford Consumer Dis. Co. of No. Phila. v. Stefanelli, 102 N.J. Super. 549 (App. Div. 1968), suppl. on other grounds 104 N.J. Super 512 (App. Div. 1969), aff'd as mod. on other grounds 55 N.J. 489 (1970), app. dism. 400 U.S. 808, 91 S.Ct. 45, 27 L.Ed.2d 38 (1970); Crescent Invest. Co. v. Comm'r of Bank. & Ins. of N.J., 103 N.J. Super. 11 (Ch. Div. 1968).[1] The Commissioner has the authority to make "rules and regulations to effectuate the purposes of this act and to establish and maintain ethical, fair, equitable and honest business standards for persons who are subject to any provision of [the] * * * act." N.J.S.A. 17:11A-54(a). The regulation here challenged was adopted pursuant to this statutory provision.
*592 It is undisputed that savings and loan associations and other banking institutions may not make directly the kind of second mortgage loans with the rate of return permitted by the act. Both federal and state chartered savings and loan associations may only engage in this kind of secondary mortgage loan business through separate service corporations. 12 U.S.C.A. § 1464 (c); 12 C.F.R. § 545.9-1; N.J.S.A. 17:12B-165(7) (b), 17:12B-152, 17:12B-153; N.J.A.C. 3:27-4.6, 3:27-4.2.
Second mortgage loans by licensees under the statute may carry a 15% per annum interest rate and by regulation of the Commissioner may have a maximum rate of 18%. N.J.S.A. 17:11A-44(a). Generally, savings and loan associations and other banking institutions, by regulation of the Commissioner, may make real estate mortgage loans with an interest rate not exceeding 9 1/2% per year. N.J.S.A. 31:1-1.
The use of a service corporation by a savings and loan association (association) is thus of benefit to it. The rate of return on loans that may be secured by second mortgages is higher than that otherwise permitted and the ultimate profits to the association that owns the corporation is correspondingly increased. On the other hand, this profit motive may contain the seed of the very kind of potential danger to borrowers that the act was designed to forestall.
Plaintiff City Consumer Services, Inc. (Consumer) was formed as a wholly-owned subsidiary service corporation of City Federal Savings and Loan Association (City Federal) pursuant to 12 U.S.C.A. § 1464(c). In January and February 1974 Consumer applied for and obtained secondary mortgage loan licenses under the act to be used at City Federal's principal place of business in Elizabeth and at City Federal's 37 branch offices. Consumer claims to have expended $4,100 in acquiring these licenses and $45,000 in initial outlay in order to engage in the secondary mortgage loan business.
*593 Subsequent to the acquisition of the licenses, the Commissioner, after due notice and an opportunity for submission of views, adopted the regulation here involved, N.J.A.C. 3:18-8.1, on June 6, 1974. It appears that Consumer and one private citizen filed statements opposing the regulation when it was proposed. The New Jersey Mortgage Council supported the proposal.
No hearings were held prior to or subsequent to the notice of the proposed regulation;[2] nor have there been reports by the Commissioner setting forth the reasons for the proposed or final regulation. These reasons, however, are embodied in the Commissioner's brief and argument on this appeal.
The regulation provides:
(a) A licensee is prohibited from engaging in the secondary mortgage loan business at a location which is utilized by a banking institution or savings and loan association as a main, branch or any other office; except that, no licensee shall be prohibited from engaging in the secondary mortgage loan business at a location utilized by a banking institution, or savings and loan association, where the office and operations of the licensee are separate, apart and distinct from the offices and operations of the banking institution or the savings and loan association and when employees of the banking institution or savings and loan association are not employed by or soliciting for the licensee.
(b) In the event a licensee is presently engaged in the secondary mortgage loan business at any such location or locations, the licensee shall have 60 days, unless extended by the Commissioner for good cause shown, to relocate its offices, subject to the approval of the Commissioner; otherwise, said license(s) shall be surrendered to the Commissioner for cancellation.
Thus, under the regulation the licensee may conduct its business at the location used by the institution, provided the office and operations of the licensee are separate from *594 those of the institution and the latter's employees are not employed by or soliciting for the licensee.
Consumer, on this appeal, challenges the validity of the regulation on a number of grounds. The New Jersey Savings League, as amicus curiae, has filed a brief supporting Consumer's position.
It is contended that the Commissioner had no authority under the act to promulgate the regulation and that it is otherwise invalid. We disagree.
It should be noted that it is Consumer which sought the licenses to engage in this kind of business. It has the burden of showing that the presumptively valid regulation is illegal because it is unduly onerous or otherwise unreasonable or is outside the scope of delegated authority. No such showing has been made on the present record. See Motyka v. McCorkle, supra; Cole Nat. Corp. v. State Bd. of Examiners, 57 N.J. 227, 231 (1970); Schwerman Trucking v. Dept. of Env. Protection, 125 N.J. Super. 14, 20 (App. Div. 1973).
The reasons set forth by the Commissioner for adopting the regulation in our view show that it was designed to effectuate what may be reasonably considered within the purposes of the act  to establish ethical, fair and honest business standards for service corporations, affiliated with associations and other banking institutions, that must be licensed to make second mortgage loans thereunder.
One of the primary goals of the act is to insure that a potential borrower knows that he is doing business with a secondary mortgage loan licensee. In this connection it is important that such borrower is not under the misapprehension that he is dealing with a banking institution or an association, having the traditional attributes of integrity, respectability and honesty of these institutions. Thus, the act provides that a secondary mortgage loan licensee shall conspicuously display its license at each licensed place of business, N.J.S.A. 17:11A-45(b); prohibits a licensee from advertising or otherwise conveying the impression *595 that it is licensed by or does business under the supervision of the State of New Jersey or the Department of Banking, except that a licensee may advertise that it is "licensed pursuant to the Secondary Mortgage Loan Act," N.J.S.A. 17:11A-46(l) (1), and forbids a licensee to advertise any name, address or telephone other than its own, or to utilize in its advertisements or oral solicitations the word "bank" or any term inferring that the licensee is, or is associated with, a bank. N.J.S.A. 17:11A-46(l) (2) and (3). The act also requires that the application for a license state the address where the secondary mortgage loan business is to be conducted; that the license specify the licensee's principal place of business or branch office and that a licensee may only transact business at the location designated on the license. N.J.S.A. 17:11A-37(a), 17:11A-41(a), 17:11A-46(a).
Accordingly, the place where the licensee's business is located and the manner in which it is conducted are of substantial consequence in the legislative scheme and appropriately the concern of the Commissioner. Additionally, he is charged not only with the enforcement of the act but also with the supervision of the activities of banking institutions and associations. His expertise in both of these areas is plain. He is in a position to sense potential dangers both to borrowers and the banks and associations, and to enact a regulation, such as this, which may avert them.
One of the potential hazards cited by the Commissioner is the possible conflict of interest were the licensed business or its employees to operate at the location of the association or banking institution. This conclusion could have been fairly reached by him. The temptation to divert what normally might be a first mortgage loan into the more profitable service corporation's second mortgage loan portfolio is not unreal, where the institution and the licensee are at the same location and staffed by the same personnel. That kind of conduct, where it is not truly justified, not only may *596 be harmful to the borrower but may lead him to believe that he is in fact obtaining a bank or association loan. By requiring the service corporation as a secondary mortgage loan licensee to operate out of a separate place with separate employees, these problems are minimized or obviated.
The act specifically precludes a construction which would expand or restrict the powers otherwise conferred by law upon financial institutions, such as federal and state banks and associations, to engage in the secondary mortgage business under the act, and provides that no such institution, in exercising any power otherwise conferred on it, shall be subject to any provision of the act. N.J.S.A. 17:11A-61.[3] If City Federal, the association, were permitted by law itself to engage in the type of mortgage business contemplated by the act, the regulation plainly would be invalid. In that event City Federal would not even need to obtain a license for that purpose. But that type of lending by the institution is not now permitted by law. It may only engage in that business through the medium of a wholly-owned service corporation, which admittedly must be licensed under the act. Even the federal regulation under which plaintiff operates provides that the association and its service corporation must maintain a separate existence as entities, that each of them must be held out to the public as a separate enterprise, and that the insured institution must not dominate the service corporation to the extent that the latter is treated as a mere department of the former. 12 C.F.R. 570.10. In view of the evils at which the state act is directed, we cannot say that the Commissioner may not supplement these requirements by mandating *597 a complete separation of location and personnel between the association and its service corporation, the secondary mortgage loan licensee. Nor do we find any basis for the claim that N.J.S.A. 17:11A-61 was intended to defer the regulation of such service corporations to the comprehensive scheme of federal regulation of associations and such corporations.
It is fairly obvious that financial institutions, such as banks and associations, were not the prime target of the act, its main purpose being to correct abuses in the second mortgage loan industry, rather than to regulate such institutions. It is also true that the Legislature has considered giving these institutions the express power to engage in second mortgage lending. But the fact is that that authority has not been bestowed by the Legislature or by federal law; and the act empowers the Commissioner to curb by regulation potential abuses in the second mortgage loan business and to exercise strict control thereof. That the institutions themselves are exempt from such control does not mean that their licensed subsidiary service corporations are also exempt.
The silence of the act with respect to such licensed service corporations is no evidence that the Legislature intended to forbid the Commissioner to adopt a regulation, such as this, that in his experienced judgment would prevent possible dangers in a new area that he reasonably foresees. In 1970, when the act was adopted, the Legislature could not have anticipated that in 1973 the Federal Home Loan Bank Board would authorize such service corporations to make second mortgage loans. Under these circumstances we cannot say that the regulation is not within the general purpose of the act and the scope of the powers granted to the Commissioner thereby. See State v. Parmigiani, 65 N.J. 154 (1974); Safeway Trails, Inc. v. Furman, 41 N.J. 467 (1964), cert. den. and app. dism. 379 U.S. 14, 85 S.Ct. 144, 13 L.Ed.2d 84 (1964). See also Donaldson v. Wildwood Bd. of Ed., 65 N.J. 236, 240 (1974).
*598 For similar reasons no inference may be drawn from N.J.S.A. 17:11A-46, that these service corporations are not subject to this type of regulation by the Commissioner. That section prohibits a licensee from advertising that it is, or is associated with, a bank. Since the authority of service corporations to make second mortgage loans was not in existence when the provision was enacted, it cannot be said that it was intended to exhaust the field or that it evidences a purpose to preclude the further prohibition of the use of the same premises and employees by a licensee, on the one hand, and an association or other financial institution, on the other.
We have considered the other data and history on both the state and federal scene submitted by Consumer and the amicus. We find nothing therein that supports the claim that there is any basic inconsistency between the federal statutes and regulations and the state rule before us, or any invasion by that rule of the federal regulatory scheme.[4] See Yellow Cab Co. v. State, 126 N.J. Super. 81 (App. Div. 1973), certif. den. 64 N.J. 498 (1974).
It is contended that the unnecessary separation required by the regulation artificially inflates the cost of doing business for the service corporations of the associations, thereby *599 lessening the ability of the corporations to charge a lesser rate of interest on second mortgage loans than the usual licensee. It is argued that the result is actually to impair the efficacy of this consumer-oriented legislation by adversely affecting, rather than aiding or protecting, potential borrowers.
This claim appears to have sufficient substance to warrant consideration. But there are no proofs on this issue upon which either the Commissioner or we may make a determination. A balancing process would seem to be required  a weighing of such proofs in the context of what the legislation and regulation seek to accomplish  so that the effect of the regulation on savings and loan associations and other regulated financial institutions, as well as borrowers, may appropriately be assessed. In this connection the kind of advertising alleged to have been engaged in by Consumer for second mortgage business, referring to "low bank rates" and to City Federal, may also be relevant.
The proceedings we have suggested should be before the Commissioner so that a determination may be made by him in the exercise of his expertise. That hearing may include, as well, evidence and arguments with respect to the other issues we have here considered. It may well be that in a factual context, after appropriate findings, the regulation itself or as applied, may be found to be wanting or to require modification or repeal. See Schwerman Trucking v. Dept. of Env. Protection, supra; Mutual Home Dealing Corp. v. Bank. & Ins. Comm'r, 104 N.J. Super. 25 (Ch. Div. 1968), aff'd o.b. 55 N.J. 82 (1969). Cf. Bailey v. Council of the Div. of Planning, etc., 22 N.J. 366, 374-375 (1956).
We leave the procedural route for that hearing to Consumer. It may petition the Commissioner for a hearing on the validity of the regulation, at which it may present proofs, N.J.S.A. 52:14B-8, or, by refusal to comply with the regulation, it may obtain a hearing if any of its licenses are sought to be revoked by the Commissioner for such noncompliance. *600 N.J.S.A. 17:11A-56. In either event, the Commissioner should hold an early hearing.
All that we hold here is that on the record before us the regulation is valid on its face.
We do not retain jurisdiction.
NOTES
[1] Both of these decisions related to a prior secondary mortgage loan statute, repealed when the present act was adopted. But the basic purpose of the legislation was not changed thereby.
[2] No such hearing is necessarily required before adoption of the regulation. See Motyka v. McCorkle, 58 N.J. 165 (1971). See also, Brown v. Heymann, 62 N.J. 1 (1972); General Motors Corp. v. Blair, 129 N.J. Super. 412 (App. Div. 1974).
[3] Although this provision under the present act, as compared with that in the prior statute, N.J.S.A. 17:11A-31, may be said in some respects to have narrowed the reach of the act with respect to these financial institutions, the change is too insubstantial to justify invalidating the regulation here involved. We do not agree that the term "financial institutions" in N.J.S.A. 17:11A-61 was intended to include service corporations.
[4] On October 9, 1970 the general counsel of the Federal Home Loan Bank Board indicated by letter that it was customary practice for an officer of a savings and loan association to be an officer of the service corporation with comparable jobs and that persons working for both the association and the service corporation should be paid by the association and the corporation, respectively, for work performed on behalf of each. We note, however, that this advice was given prior to the 1973 amendment of the federal regulations which for the first time permitted the investment by service corporations in second mortgages. Assuming that this information was authoritative, it did not take into account the problems that may ensue from that kind of financing.