In re Dorothea M. STEPANSKI, Debtor.

**BENEFICIAL FINANCE CO. OF NEW JERSEY, a corporation, Plaintiff,**

v.

**Robert M. WOOD, Trustee for Dorothea M. Stepanski, Debtor, and Dorothea M. Stepanski, Defendants.**

Bankruptcy No. 81–06535.
Adv. No. 82–0051.

United States Bankruptcy Court,
D. New Jersey.

May 18, 1982.

Teich, Groh, Robinson, Kline & Frost, by Barry W. Frost, Trenton, N. J., for plaintiff.

Lester J. Da Costa, Camden, N. J., for debtor.

Robert M. Wood, Red Bank, N. J., trustee.

ON COMPLAINT TO DETERMINE EXTENT AND VALIDITY OF MORTGAGE LIEN AND FOR PERMISSION TO FORECLOSE.

## OPINION

WILLIAM LIPKIN, Bankruptcy Judge.

The Debtor herein, Dorothea M. Stepanski (Debtor), filed a petition for relief on November 2, 1981 under the provisions of Chapter 13 of the Bankruptcy Code and Robert M. Wood, as standing Trustee of Chapter 13 cases, thereby became involved in the Estate of the Debtor.

The Debtor is the owner in fee of real estate, being her principal residence, known as Route 322, Box 97, Richwood, Harrison Township, Gloucester County, New Jersey. The plaintiff, Beneficial Finance Co. of New Jersey (Beneficial) has a mortgage dated October 25, 1979, thereon, recited as due the sum of $30,214.34, with interest at 17% payable over a period of 180 months, which mortgage was recorded on October 31, 1979 in Book 906 of mortgages, page 664, in the Clerk's Office of Gloucester County, New Jersey. The mortgage instrument recites therein that the property is subject to another mortgage given to Farmers National Bank in the principal sum of $15,000.00, dated July 27, 1976, recorded in Book 826 of mortgages, page 877.

Beneficial filed a complaint in this cause of action seeking to have the automatic stay of proceedings imposed by reason of the provisions of Section 362 (11 U.S.C. 362) vacated and to permit it to proceed with its foreclosure action in the State Court of New Jersey, against the defendants, the Debtor and Trustee; and for counsel fees to be paid to counsel for the plaintiff out of the Debtor Estate; and that the Debtor turn over to the plaintiff any and all rents, issues and profits collected by the Debtor from any occupants of the premises described in the supporting papers attached to the complaint.

The Debtor opposes the complaint on the ground that the loan is illegal and void and is subject to forfeiture as Beneficial paid off the first mortgage and thereby became the first mortgage holder and illegally charged higher interest rates purportedly as a second mortgage lender.

The testimony and exhibits reveal the following facts leading up to the execution on October 25, 1979 by the Debtor of the mortgage in issue to Beneficial.

Prior to October 21, 1979 the Debtor was indebted to Farmers National Bank on a first mortgage on her home in the sum of $12,893.02. She was then indebted to Beneficial in the sum of $9,187.47 secured by a second mortgage on her home to Beneficial.

The interest rate on the first mortgage was 9¼% and the interest rate on the second mortgage was 15%. In addition she had outstanding unsecured trade and charge card creditors:

| | |
|---|---:|
| Postal Finance | $ 1,974.00 |
| First Peoples Bank | 338.19 |
| Chase Manhattan | 506.57 |
| Chase Manhattan | 1,397.76 |
| Sears Roebuck | 231.16 |
| City Bank | 419.13 |
| Strawbridge | 112.72 |
| Strawbridge | 98.11 |
| M & F Fences | 324.43 |
| Peoples Bank & Trust | 388.11 |
| First Pennsylvania Bank | 2,051.59 |
| | $ 7,841.77 |

Prior to October 25, 1979 the Debtor contacted Beneficial through its manager, Daniel O'Neil, with whom she had had previous dealings to obtain loans, and she discussed with him a loan to consolidate her bills. Beneficial is a licensed secondary mortgage lender and agreed, through Mr. O'Neil, to grant the Debtor a loan to be secured by a second mortgage on her home under the provisions of the "Secondary Mortgage Loan Act".[1]

O'Neil testified that he knew that Beneficial had no legal right to lend money secured by a first mortgage and he therefore suggested and prevailed upon the Debtor to accept funds to pay off all debts, including the first mortgage, except for $98.32 to remain due on the first mortgage. Mr. O'Neil had the Debtor sign a Second Mortgage Loan Note and Mortgage in the amount of $30,214.34. O'Neil supplied funds to pay $7,841.77 for the trade and charge card creditors, a pay off by book entry of the second mortgage which it already held and $12,775.00 to the first mortgage and gave the Debtor the remainder of the fund of the so called new second mortgage in the sum of $268.07. Then within one or two months the Debtor paid off the small sum still due on the first mortgage whereby Beneficial became the first mortgagee on the property of the Debtor.

Beneficial seeks to justify its conduct in manipulating the financial affairs of the Debtor and thus obtained a first mortgage position by stating that it was in the interest of the Debtor. The new mortgage called for monthly payments of $465.00 per month for 180 months (15 years), upon the loan for $30,214.34 at 17% interest. The total interest over the 180 months (15 years) period was computed to be $53,485.66, making a total sum to be paid by the Debtor of $83,700.00. Mr. O'Neil testified her monthly payments before the consolidated loan would have been $953.00 out of an income of $1,620.00 per month, leaving her $667.00 a month for other purposes. He testified his refinancing of all debts, whereby she would pay $465.00 per month for 15 years, reduced the Debtor's debt ratio from 58% of her income to 39% of her income.

The Debtor had another personal loan of $1,644.00 with Beneficial which carried an interest charge of 22%. When queried why that loan was not included, the response was that the equity in the Debtor's home was not large enough to include that obligation, though the home had a forced sale value of $40,000.00, with a market value of $42,000.00. His testimony on this point, based upon the value of the property and her income and disbursements, is not creditable.

The testimony and exhibits before me establish that the manager of Beneficial knew that Beneficial had no right under the Secondary Mortgage Act to make first mortgage loans. He disclosed that fact to the Debtor and arranged for a loan to her that would circumvent the provisions of the Act. Mr. O'Neil had the Debtor pay off a first mortgage which carried a 9¼% interest rate on the principal then due of $12,893.02. She then became obligated to pay 17% thereon, plus an increase of 2% interest on the sum then due on the second mortgage of $9,187.47, which Beneficial already held. It was recognized by Mr. O'Neil that the Debtor was obliged to pay 12% to 18% interest on the trade and charge card creditors set forth above. It stands to reason that

1. N.J.S.A. 17:11A–34 et seq. Secondary Mortgage Loan Act.

the pay off time for the trade and charge card creditors would not take 15 years and the ultimate interest payments to such creditors would be far less than the amount she would be obliged to pay for interest to Beneficial over 15 years.

The Debtor did have money left after paying living expenses from her $1,620.00 monthly income to make payments on her debts then in existence. The activity of O'Neil was not as noble in her interest as he would have the court believe.

Regardless of the moral and equitable factors in this Estate, which reflect sharp dealings by Beneficial when it had the Debtor execute the second mortgage under the facts set forth above, the right of Beneficial to have a consensual *valid second mortgage* depends upon its *strict compliance* with the provisions of the Secondary Mortgage Loan Act. From the evidence before me I do find that Beneficial has obtained a mortgage on the Debtor's property in violation of the Secondary Mortgage Loan Act and therefore it is void.

The sections of this Act pertinent to this cause of action are:

N.J.S.A. 17:11A–35. Definitions

As used in this act, the following words and terms shall have the following meanings:

a. "Secondary mortgage loan" means a loan made to an individual ... which is secured in whole or in part by a lien upon any interest including a mortgage, indenture, or any other similar instrument or document, <u>which real property is subject to one or more prior mortgage liens</u> and which is used as a dwelling, ... (3) is at an interest rate which is not in excess of the usury rate in existence at the time the loan is made, as established in accordance with the law of this State, and on which loan the borrower has not agreed to pay, directly or indirectly, any charge, cost, expense or any fee whatsoever other

than said interest; .... (Underlining added)

Section 17:11A–44 fixes the amount of interest that may be charged by a licensee, ... at an annual percentage rate not exceeding 15%, computed by the actuarial method (United States rule) and; provided further, the Commissioner of Banking, with the advice of a special advisory board constituted as hereinafter provided, may by regulation adopted, amended and rescinded from time to time, provide that the interest which may be taken for any such loan shall be more than 15% per annum but not more than 18% per annum, as shall be prescribed in such regulation.[2]

(1) No interest shall be paid, deducted, or received in advance. Interest shall not be compounded and shall be computed only on unpaid principal balances.

Section 17:11A–45 requires the licensee to keep detailed records of the transaction with the borrower or applicant for a loan even to the extent as required in (7) of an "[i]ndividual file in which the borrower's application for a loan and any correspondence, including collection letters, memorandums, notes or any other written information pertaining to the borrower's account, shall be kept."

Subsection j requires that the licensee "[g]ive to the borrower, without charge, a copy of every instrument, document or other writing the borrower signs." See also *City Consumer Services, Inc. v. Dept. of Banking*, 134 N.J.Super 588, 342 A.2d 540 (A.D.1975).

Of particular significance are the provisions of 17:11A–46, "Prohibitions", which provides:

f. Make a secondary mortgage loan until such time as the licensee has obtained:

(1) A written statement signed by the borrower that the holder of every other

---

2. For interest formula and tables see N.J.A.C. 3:18–33; Interest regulations N.J.A.C. 3:18–9.1; Prohibition of other charges than legal interest and lawful fees N.J.A.C. 3:18–3.4. The maximum rate established by the Commissioner and Advisory Board between the period November 24, 1978 through January 14, 1980 on Secondary mortgage loans was 17%. That was the rate charged by Beneficial to the Debtor.

existing mortgage on the real property offered as security for the secondary mortgage loan has declined to make a loan in the desired amount or;

(2) A written statement signed by the borrower that the terms offered by the holder of every other existing mortgage on the real property offered as security for the secondary mortgage loan are not acceptable to the borrower.

Section 17:11A–58, dealing with *"Unenforceability of loan not in compliance with law"* provides therein:

Any obligation on the part of a borrower arising out of a secondary mortgage loan shall be void and unenforceable unless such secondary mortgage loan was executed in full compliance with the provisions of this act. (Underlining added)

Finally of interest in this matter is the law of the State of New Jersey which fixes the rate of interest for first mortgages as set forth in N.J.S.A. 31:1–1; 31:1–1.1. Briefly stated, these sections provide that the Commissioner of Banking of the State of New Jersey may, be regulation, establish the rate of interest on loans secured by a first lien on real property as described therein.[3 and 4] The Debtor's property falls within such description. The rate on such loans fixed as of October 5, 1979 by the Commissioner was 10½%, which date was immediately prior to the loan herein involved, i.e., October 25, 1979.

Beneficial, knowingly with intent, violated the provisions of the Secondary Mortgage Loan Act, 17:11A–34, sequi, when it made the loan now in issue to the Debtor. The agent of Beneficial, Mr. O'Neil, submitted at the trial the printed form of Beneficial, designated "Certification" as required in section 46f(2) of the Act set forth above signed by the Debtor wherein the Debtor by a check mark therein represented compliance to the effect:

With respect to a request for additional financing in the amount requested, secured by another mortgage upon the same real property which now is being offered to you as security for a secondary mortgage loan, the terms offered by the holder of the prior mortgage on such real property are not acceptable to the undersigned.

The printed portion on the form, which related to compliance with 46f(1) was not checked off. That section would reflect whether the Debtor had determined from the holder of the prior mortgage on the property that that holder would not make a loan in the amount requested of Beneficial. Neither Beneficial nor the Debtor had ever inquired of the first lien holder of terms for a loan which would be acceptable to the Debtor, nor did the Debtor inquire of the first mortgagee for a loan in the amount given by Beneficial to the Debtor.

Beneficial had the Debtor sign the Certification, giving lip service to the critical requirement of the Statute. The Debtor owed the first mortgagee only a sum of approximately $13,000.00, with interest thereon of 9¼%, which was secured by a mortgage on property worth over $40,000.00. That mortgagee could have granted a mortgage bearing an interest rate of 10½%. Beneficial did not even go through the motion to have the Debtor inquire whether the first mortgagee would increase its mortgage on the heavily oversecured property or extend the loan to the Debtor upon acceptable terms. Beneficial merely checked with the first mortgagee upon the amount due and then wrapped up its loan transaction in the most expeditious way to serve its purpose and obtained a first mortgage on the Debtor's property in violation of the Secondary Mortgage Loan Act, as well as the Statute dealing with usury.

The fact that the Debtor signed the Certification handed to her by Beneficial, ostensibly to satisfy the requirement of section 46f(1) and (2), does not raise an estoppel against her defense of violation of the Secondary Mortgage Loan Act.

---

**3.** Exemptions in favor of certain lending institutions are set forth in 31:1–1(e)(2).

**4.** N.J.A.C. 3:1–1.1.

Furthermore, to indicate almost venal action by Beneficial in addition to violating the provisions of the Secondary Mortgage Loan act was its conduct in the obtaining of a *first* mortgage on the Debtor's property in violation of the Statute.[5] Beneficial had, after the execution of the secondary mortgage at the maximum rate of 17%, given the Debtor money to pay off the remaining piddling sum due of $98.32 on the first mortgage, so that it ended up with a first mortgage for over $30,000.00 at a 17% interest rate, payable over a period of 15 years. As stated above, it even improved its own position by discharging the secondary mortgage it already held at 15% by incorporating it into the new mortgage at 17% interest.

The constitutionality of the Secondary Mortgage Loan Act was established in *Crescent Investment Co. v. Commissioner of Banking and Insurance of the State of New Jersey*, 103 N.J.Super 11, 246 A.2d 493 (Ch. 1968). Therein the court stated, page 18, in dealing with the legislative history of the Act,

.... It was to protect New Jersey residents from this misleading advertising and exorbitant charges and fees that the Secondary Mortgage Loan Act was enacted. This legislation is very restrictive regarding fees to be charged, safeguards around the transaction itself, location of the place of business, keeping books and records, and the like. In short, this legislation was a remedial measure designed to give the State a very tightfisted control over the secondary mortgage loan business. (Underlining added)

See also *Stubbs v. Security Consumer Discount Company*, 171 N.J.Super. 67, 74, 407 A.2d 1269 (A.D.1979).

It is clear from the evidence before me that Beneficial has knowingly engaged in an usurist transaction at the expense of the Debtor and in violation of the provisions of the Secondary Mortgage Loan Act. The

fact that the Debtor signed the Certification as above set forth which purposely left unpaid a few dollars in the first mortgage for 30 or so days does not estop the defense raised by the Debtor.

As stated in *HIMC Investment Co. v. Siciliano*, 103 N.J.Super. 27, 38, 246 A.2d 502 (Law Div.1968):

The strong policy of the act may not be dissipated by the facts asserted to establish the estoppel. To hold otherwise would sanction the circumvention of the salutary benefits afforded by the law by means never contemplated by the statute which promulgated the policy.

Where the lender perpetrates deliberate violations of the provisions of the Secondary Mortgage Loan Act, it is not relieved of its consequences by the execution of any untrue supporting papers by the Debtor and where the mortgage is executed whereby it, in effect, becomes a first mortgage, it is executed without "full compliance" with the act and is "void and unenforceable under N.J.S.A. 17:11A–58. *Stubbs v. Security Consumer Discount Company*, 171 N.J.Super. 67, 75, 407 A.2d 1269 (A.D.1979) (Underlining added). *City Consumer Services, Inc. v. Dept. of Banking*, 134 N.J.Super. 588, 595, 342 A.2d 540 (A.D.1975) wherein the court refers to the requirements set forth in the Secondary Mortgage Act to protect against, "[t]he temptation to divert what normally might be a first mortgage loan into the more profitable service corporation's second mortgage loan portfolio ...."

The usual attendant result in dealing with usurious loans of disallowing the interest factor and permitting payment of the sum received, *Ferdon v. Zarriello Bros. Inc.*, 87 N.J.Super. 124, 128, 208 A.2d 186, does not apply in treating with loans which violate the provisions of the Secondary Mortgage Act. As was stated in *HIMC Investment Co. v. Siciliano*, supra, page 39, 246 A.2d 502, when the lender sought to recover the sum actually borrowed and received:

5. There was not "full compliance" with the Secondary Mortgage Loan Act as required in 17:11A–58; with the provisions of 17:11A46f(1) and (2) requiring inquiry of or denial by prior mortgagees to obtain the funds as set forth

above; and there was violation of N.J.S.A. 31:1–1, sequi, fixing the maximum interest rate at 10½% for first mortgages set by regulation of the Commissioner of Banking.

There is no doubt that the consequences to the lender of the violation of the act are drastic, although it should be noted that they are not as harsh as the penalty imposed by the Small Loan Law, N.J.S.A. 17:10–1 et seq., whereby the borrower is additionally "entitled to recover from the lender any sums paid or returned to the lender by the borrower on account of or in connection with the loan." N.J.S.A. 17:10–14.

The Secondary Mortgage Loan Act is penal as to the lender and remedial as to the borrower. Cf. *Ryan v. Motor Credit Co. Inc.,* 130 N.J.Eq. 531, 541 [23 A.2d 607] (Ch.1941), affirmed 132 N.J.Eq. 398 [28 A.2d 181] (E. & A. 1942). In the "run-of-the-mill" case arising under this act, barring any collusion as was present in Ryan, or other inquitable conduct, since the note and mortgage are not enforceable the court will usually grant the request of the borrower to have the (now unenforceable) mortgage cancelled.

In this case I find no extenuating circumstances or facts such as took place in *Ryan* [6] or *HIMC* whereby the Debtor is to be charged with conduct on her part to minimize her right to relief. In *Ryan* the borrower was a businessman who obtained many loans on cars over a period of time and in *HIMC* the borrower had obtained return of $500.00 which was part of the money covered by the mortgage. In HIMC the mortgage was to be cancelled of record upon payment to the lender of the $500.00 with interest thereon received from a third party. The Debtor in this case was the victim of Beneficial's high handed conduct.

I must, therefore, find that the debt and mortgage to Beneficial is void under the provisions of the Secondary Mortgage Loan Act. An Order shall be entered in accordance with the foregoing findings of fact and conclusions of law.

---

**6.** *Ryan v. Motor Credit Co., Inc.,* 130 N.J.Eq. 531, 23 A.2d 607 (Ch.1941) affirmed 132 N.J.Eq. 398, 28 A.2d 181 (E & A 1942), dealing with the Small Loan Act, is an excellent exposition of the law relating to usury and the general rules of equity and pari-delicto of the lender and borrower, and that in dealing with small loans the *exception* to the rule of pari-delicto is usually applied because in such cases it is presumed that the borrower is always the oppressed victim of circumstance, the slave of the lender, and is not therefore, in pari-delicto. Of academic interest is the statement, page 556, 23 A.2d 607, that the presumption of non-pari-delicto is a mere fiction of law,

"This fiction had its origin in the archaic rule which prohibited all interest, excluded the usurer from the altar, denied him absolution in the hour of death and a Christian burial after death. It also finds support in that peculiar doctrine, advanced by some of the Fathers of the Church in the fifteenth century, that 'Jews might be allowed to take interest since they were to be damned in any case, and by giving them a monopoly of the business the souls of Christians might not be lost.' See Liegois, Histoire de L''Usure. 82, cited in *Marshall v. Beeler,* 104 Kan. 32, 178 P. 245 (which see for an interesting discussion of the ancient rules applicable to usury (interest) and the development of the modern law of usury)."

The reference to Jews being allowed to take usurious interest is a canard, fostered by some of the religious bigots of the time, because as early as the fifth or sixth century B.C. the Mosaic law was declared in Leviticus XXV—36 and 37, wherein it is stated "Thou shalt not take of him any usury or increase; but thou shall be afraid of thy God, that thy brother may live with thee; thy money shalt thou not give him upon usury, nor lend him thy victuals for increase."